John A. **WHITE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18355.

United States Court of Appeals District of Columbia Circuit.

June 30, 1965.

---

McGowan, Circuit Judge, dissented.

Mr. Lloyd N. Cutler, Washington, D. C., with whom Mr. John Roderick Heller, III (both appointed by this court), Washington, D. C., was on the brief, for appellant.

Mr. Martin R. Hoffmann, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WASHINGTON and McGOWAN, Circuit Judges.

BAZELON, Chief Judge:

In this petition for rehearing, appellant urges that our opinion of September 17, 1964 shows that we have misread the record in affirming his conviction for first degree murder. That opinion assumed, without deciding, that appellant's statement to the police after arrest was inadmissible in the Government's case in chief. But we held that statement admissible on Government rebuttal to impeach appellant's self-defense claim for the reasons that (1) appellant "made the first reference to his statement" in his testimony, and (2) "defense counsel did not object to the prosecutor's subsequent use of that statement * * *."

Appellant now asserts, and we agree, that these reasons do not survive a closer reading of the record. The statement was first mentioned in the presence of the jury during the prosecutor's cross-

examination of appellant, in the following colloquy:

Q. I asked you, Mr. Defendant, that as soon as you had settled down enough after this excitement of the police officers coming in with their drawn guns that you could think, you told the police then all about this, that you told us.

A. I didn't tell the police anything right then.

Q. I didn't say right there.

I said you told this to the police, didn't you, about his coming at you with his hand in his pocket.

A. I don't know whether I told the police that or what I told the police at the time. I made a statement at headquarters, if that is what you mean.

Q. Fine. I am glad you mentioned that.

The prosecutor then asked, "In that statement to the police at headquarters, which you have just mentioned, did you tell them about this man advancing on you with his hand in his pocket?" Appellant answered that he did not remember. At the prosecutor's request, the court instructed appellant to read the statement to himself to refresh his memory. The question was then repeated, and appellant answered, "I don't see it in the statement."

Our previous opinion found that appellant's testimony, "I made a statement at headquarters, if that is what you mean" justified the prosecutor's introduction of the statement to counter the "likely inference—an erroneous one— * * * [that the statement] did contain a complete account of his version of the shooting." But it is evident from the record that the prosecutor purposely elicited from appellant this reference to his statement, since the trial court had earlier ruled, over defense counsel's objections, that the statement could be used for impeachment.

■■ Another incident in appellant's testimony is now urged by our dissenting brother as grounds for affirmance. Appellant testified on direct examination that, at his arrest, "I asked the officer could I explain to them what happened. They made me sit down in the chair and told me not to say anything." The dissent construes this testimony as an attempt by appellant "to leave with the jury the inference that he would have given the police a contemporaneous version of what had happened if they had let him do so" and the further inference that such statement would have supported his self-defense claim. In some circumstances, otherwise inadmissible evidence may be used to contradict a defendant's "affirmative resort to perjurious testimony." Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954). But *Walder* does not authorize the use of inadmissible evidence to contradict such remote inferences as our dissenting brother finds here. Moreover, the Government did impeach this inference through the testimony of two arresting officers that appellant had spoken freely when arrested and had made no claim of self defense. Thus, unlike *Walder*, the inadmissibility of appellant's statement did not "provide him [self] with a shield against contradiction of his untruths" and he could not rely "on the Government's disability to challenge his credibility" on this point. *Ibid.*

■ The fact that appellant's statement might impeach his defense more effectively than the police testimony is no justification for admitting it. A defendant "must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief." [1] Inadmissible "evidence is not rendered admissible merely because the defendant testifies in his own behalf." [2] Appellant made no

1. Walder v. United States, *supra*, 347 U.S. at 65, 74 S.Ct. at 356.

2. Johnson & Stewart v. United States, 120 U.S.App.D.C. ——, 344 F.2d 163, at p. 165, decided Oct. 15, 1964.

" 'sweeping claims' [3] going far beyond the crime charged" nor was the impeaching use of the statement restricted "to 'lawful proper acts' which are purely 'collateral matters' [4] to the issues at bar." Rather, the use of the statement here "bore on the central issue" of the case.[5] Appellant admitted the shooting, but claimed he acted in self-defense. The Government used appellant's statement directly to contradict his only defense.[6] "To permit the Government to introduce illegally obtained statements which bear directly on a defendant's guilt or innocence in the name of 'impeachment' would seriously jeopardize the important substantive policies and functions underlying the established exclusionary rules." [7] We vacate our previous affirmance and remand the record for determination of the circumstances in which appellant's statement was obtained by the police. If that determination reveals that the statement was inadmissible for the Government's case in chief, the conviction is reversed for a new trial.

So ordered.

McGOWAN, Circuit Judge (dissenting):

The petition for rehearing pending complains primarily of our reliance upon Rule 52(b), FED.R.CRIM.P., in our earlier disposition of this appeal. It is urged that appellant's counsel, at the time appellant's statement to the police was used to refresh his recollection, was not required to articulate a fresh objection but was, rather, entitled to rely upon an earlier indication of a purpose to object, made in a bench colloquy when appellant first took the stand. Although the transcript continues to show this purpose as having been, to say the least, equivocally pursued, I would not be disposed, in view of the seriousness of the crime charged and the sentence imposed, to reject appellant's reading of the record. Accordingly, I think it would be appropriate to amend our opinion in the following respects for the purpose of making clear that an affirmance of this conviction need not rest upon an assumed absence of objection at the trial to the use of the statement now urged as error on appeal:

1. In the last paragraph of Part I, two sentences ("Apart from considerations stemming from Mallory, augmented by *Walder*, we would have no difficulty in finding the prosecutor's cross-examination proper. There was no objection based on these considerations,[3] and since the defendant made the first reference to his statement, we cannot say that this cross-examination was plain error under Rule 52(b), FED.R.CRIM.P., if it was error at all.") are deleted; and there is substituted therefor—"What we hold is that, on the facts of this record, the court did not allow cross-examination to exceed proper limits.[3] "

2. The following paragraph is added to Footnote 3:

There was, however, a colloquy at the bench at the time appellant took the stand and before he told his story. At that time defense counsel indicated a purpose to object to any subsequent use of the statement. This colloquy terminated somewhat inconclusively for the reason that the prosecutor, under the urging of the court, said that he did not intend to use the statement

---

3. Walder v. United States, *supra*, 347 U.S. at 65, 74 S.Ct. 354.

4. Tate v. United States, 109 U.S.App.D.C. 13, 16–17, 283 F.2d 367, 380–381 (1960).

5. Bailey v. United States, 117 U.S.App. D.C. 241, 245 n. 3, 328 F.2d 542, 546 n. 3, cert. denied, 377 U.S. 972, 84 S.Ct. 1655, 12 L.Ed.2d 741 (1964) (dissenting opinion of Judge Wright, approved in Johnson & Stewart v. United States, *supra* note 2, 344 F.2d at p. 165.)

6. The dissent asserts, without specification, that the statement was admitted only "under carefully limited conditions." The sole "limitation" we perceive is that appellant's full statement was not read to the jury. But appellant's testimony, in response to the prosecutor's questioning, that his statement did not mention self-defense was as damaging as if the statement had been admitted in evidence.

7. Johnson & Stewart v. United States *supra* note 2, 344 F.2d at p. 166.

unless he felt compelled to do so by the nature of appellant's testimony. Because, however, defense counsel may have thought that his earlier expressions in the bench conference served as continuing objections, we are prepared to assume that the matter was adequately called to the court's attention within the meaning of Rule 52 (b).

It is also urged in the petition for rehearing that our holding was erroneous because it referred to the circumstance that the first reference to the existence of the written statement came from appellant himself, and the appellant was thereby taken to have opened up the subject for impeachment purposes. There is not, as there could not be, any claim that the jury did not first hear of the statement from the lips of appellant, but it is said that we should not have taken this to be an opening up inasmuch as appellant was craftily maneuvered by the prosecutor into making this first reference. The short answer to all this is that affirmance does not turn upon the fact that it was the appellant who initially spoke of the statement. A close look at the unfolding of the record in this case will show what I mean in this respect.

Reference has already been made to the bench colloquy when appellant first took the stand, which ended with an expression of willingness by the prosecutor to defer to the court's wishes and not to use the statement at all unless compelled to by something in the forthcoming testimony. Appellant then gave his version of the shooting.[1] He then told how the policemen who arrived at the scene would not let him tell what had just happened.[2] The moment direct examination was finished, the prosecutor asked to approach the bench, and there said as follows:

(AT THE BENCH:)

MR. TITUS: Your Honor, does the Court have the statement? Your Honor, may I refer the Court respectfully to page 2, the first paragraph on page 2 of this statement? The paragraph that I am referring to, Your Honor, which I will not say because the jury may hear it, as Your Honor can see, is directly and totally contradictory to the testimony that he has just given.

I submit, Your Honor, that this has nothing to do with the elements of the offense. It has to do with the defense that he has asserted in this case, not the elements of the crime.

The first two sentences of that paragraph, Your Honor, are most directly contradictory.

The court said it would think about the matter during the noon hour. After the noon recess, the judge addressed himself to the prosecutor's request to use the statement in cross-examination:

Now, as to the two sentences, Mr. Titus, I assume that you have indicated you are going to stop at the word laughed. I kicked the door open and he—Kelly Miller Griffin—was standing there. I raised the gun and I fired. He stood there and looked at me and laughed.

MR. TITUS: That's right.

THE COURT: One of the difficulties is that the two sentences are sort of taken out of context, out of the whole statement and this is what bothers me about it.

---

[1]. A I had just got to the door, just about to the frame. He was approaching his door. And I told him to stop and he wouldn't stop, he kept coming. That's when I brought the gun up and shot him.

Q And will you describe him as he was approaching, what he was doing, if anything?

A Well he had his hands in his pocket as if he had something in it. I didn't know what he had. I wasn't going to ask him if he was going to hurt me. I know he had carried a knife.

[2]. A They asked me where was the shooting. I told them it was upstairs. So they got me in-between them and carried me upstairs. I asked the officer could I explain to them what happened. They made me sit down in the chair and told me not to say anything.

I think I should not permit you to ask about those two sentences, but I would think it would be proper in this connection, as long as you made this proffer, *in view of the defendant's testimony on his theory of self-defense,* to ask the defendant whether he made any statement about threats or having his hands in his pockets, approaching that closet door.

I would confine it to that one question if you wish to ask it, and permit that to be asked. In the event that he admits that he didn't say anything about that in the conversation with the police, that would end it, of course. In the event that he denies it, then I think this statement could be shown to him, not for him to read aloud, but to read to himself those portions to see if it would refresh his memory—read the whole statement, rather, to see if it would refresh his memory. Rather, in case he said he did make a statement, that is what I am trying to say—

MR. TITUS: Yes, Your Honor.

THE COURT: About it in his conversation, then I would permit him to read to himself the statement.

MR. TITUS: Very well, Your Honor. [Emphasis supplied.]

Throughout all this defense counsel was silent, and remained so even as the court made its ruling. Thus, as the cross-examination began, the prosecutor and defense counsel knew that the court had specified exactly what use could be made of the statement. That ruling did not depend upon appellant's being the first to refer to the statement. It was conditioned, rather, only upon the character of appellant's response to a question to be asked as to whether appellant had ever made a statement to the police about the threatening move towards him by the decedent. A question of this nature by the prosecutor on cross-examination was clearly proper. When appellant indicated that he had made a statement to the police, he was asked if it made reference to these circumstances. When he said he did not remember, he was handed the statement solely to refresh his recollection. This was all squarely within the scope of the court's earlier ruling as to what it would permit. And I do not think that that ruling was a reversibly arbitrary enlargement of cross-examination.

When the court made its ruling, this was the situation: Appellant had testified to the effect that the decedent was physically threatening him when the fatal shot was fired; and that he had tried to tell his story to the police who came to the scene, who refused to hear it. The officers in question testified to quite a different version of this confrontation, and one which was wholly inconsistent with any refusal by them to permit appellant to tell them what had happened. It is naive to think that the point of appellant's testimony was not to leave with the jury the inference that he would have given the police a contemporaneous version of what had happened if they had let him do so. The fact was that such a version had been given to the police in writing at the station shortly thereafter. It made no reference to the threats. The prosecutor in effect sought leave to cast doubt upon the credibility of appellant's testimony that he had been denied an opportunity to speak, and thereby to combat the inference which appellant had affirmatively imported into the case by testimony in conflict with that of the police. That leave was granted by the court under carefully limited conditions.

A defendant is, of course, free to deny all the elements of the crime charged without being contradicted by statements illegally obtained from him, but, as *Walder* contemplates, this freedom does not extend to taking a misleading advantage of the prosecution's normal inability to make any use of such statements, at least in respect of matters bearing upon the credibility of testimony other than a direct denial of guilt.[3] On

---

3. Appellant's testimony might well have led the jury to conclude, erroneously, that his
statement to the police actually corroborated the account he had just given

the whole record before us, I do not believe that the highly restricted use of appellant's statement permitted by the trial court was an abuse of his discretion in the conduct of the trial resulting in such unfairness to appellant as to require any affirmative response to the petition for rehearing other than that contemplated hereinabove.

in open court. The prosecutor's limited use of that statement was intended to do no more than correct that impression. In effect, it merely deprived appellant of a piece of evidence whose contents had been misrepresented to the jury, and thereby, of course, weakened the credibility of his testimony.

The test under Walder is not whether the Government's use of the illegally obtained evidence makes it more difficult for the defendant to convince the jury of his defense. Presumably it would not be used if it were not calculated to have just that effect, and to this extent its use may impair the defendant's ability successfully to deny all the elements of the charge

against him. Walder was a prosecution for four illicit transactions in narcotics. After the defendant had testified that he had never sold, possessed, received or transferred narcotics in his life, the prosecutor was permitted to ask the defendant if narcotics had not been illegally seized from his home prior to an earlier prosecution, and, when the defendant denied that they had, to introduce independent evidence of that fact. It would not seem an unreasonable speculation to suppose that this disclosure somewhat undermined the credibility of the defendant's claim that he had not possessed or sold narcotics on the occasions in question.