**Romey J. INGE, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19497.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 24, 1965.

Decided Jan. 5, 1966.

1. D.C.Code § 5–417.

Mr. George J. Thomas, Washington, D. C. (appointed by the District Court), for appellant.

Mr. Charles L. Owen, Asst. U. S. Atty., with whom Mr. David C. Acheson, U. S. Atty., at the time the record was filed, Messrs. Frank Q. Nebeker, Asst. U. S. Atty., and John Wall, Atty., Dept. of Justice, were on the brief, for appellee.

Before BAZELON, Chief Judge, EDGER-TON, Senior Circuit Judge, and WRIGHT, Circuit Judge.

BAZELON, Chief Judge:

Appellant was charged with second degree murder and convicted by a jury of the lesser included offense of manslaughter.[1] At trial he claimed that he acted in self-defense. On this appeal he objects to the jury instructions concerning the use of excessive force, and the use of an impeaching statement allegedly obtained in violation of the *Mallory* rule.[2]

The record discloses that appellant had left his wife to live with the deceased woman but that, after physical beatings and a knife attack by her, he returned to live with his wife. Several witnesses testified that, on the evening in question, the deceased confronted appellant at his sister's home and began an argument over the lease for the apartment appellant and the deceased had previously occupied together. During the course of the dispute, the deceased, angered, seized appellant by the lapels and threatened to "whip" him that night. Appellant departed soon thereafter and was immediately followed by the deceased who, according to appellant's testimony, grabbed him and then began to attack him with a knife. He testified he drew his own knife and proceeded to defend himself. When the battle was over, the deceased had suffered five superficial slashes on her face, two deep and fatal stab wounds in the chest, a third, non-fatal stab wound in the chest and a stab wound under the left arm pit. Appellant had a scratch on one wrist. He testified that he had not struck the deceased after she went down.

■ We reject appellant's threshold claim that, since he was the victim of an unprovoked attack with a deadly weapon, the jury should have been instructed that he had a "perfect" right of self-defense which includes the use of excessive

---

1. Appellant was sentenced to imprisonment for 5 to 15 years. The District Court granted leave to appeal in forma pauperis and appointed counsel for this appeal.

2. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

force.[3] Our traditional regard for life limits the defender's use of force to that which is reasonable in protecting against the attack.[4]

 It is reasonable, as the trial court instructed the jury, to use a deadly weapon in defense against an attack with one, though in general the defender must use the weapon in a reasonable manner, *i. e.*, only to the extent he reasonably thinks is required to save his own life or to avert serious bodily harm.[5] However, the claim of self-defense is not necessarily defeated if, for example, more knife blows than would have seemed necessary in cold blood are struck in the heat of passion generated by the unsought altercation. A belief which may be unreasonable in cold blood may be actually and reasonably entertained in the heat of passion. "[I]f the last shot was intentional and may seem to have been unnecessary when considered in cold blood, the defendant would not necessarily lose his immunity if it followed close upon the others while the heat of

the conflict was on, and if the defendant believed that he was fighting for his life." Brown v. United States, 256 U.S. 335, 344, 41 S.Ct. 501, 502, 65 L.Ed. 961 (1921).

 In the present case, the jury was erroneously instructed in effect that excessive blows struck "in a sudden heat of passion" would require a manslaughter verdict.[6] Since the jury found appellant guilty of manslaughter, had it been properly instructed, it might well have returned a verdict of not guilty on the grounds that any unnecessary blows were delivered in the heat of passion, while the defendant actually and reasonably believed he was fighting to save his life or to avert serious bodily injury. Hence, although the instructions we discuss were not challenged at trial, we think they constitute plain error affecting substantial rights which we may redress under Rule 52(b) of the Federal Rules of Criminal Procedure.[7] A new trial will therefore be required.

---

**3.** At least one jurisdiction has adopted this rule. See Ludwick v. State, 151 Tex. Cr.R. 623, 210 S.W.2d 589 (1948); Mayhew v. State, 65 Tex.Cr.R. 290, 144 S.W. 229, 39 L.R.A.,N.S., 671 (1912); *cf.* State v. Linhoff, 121 Iowa 632, 97 N.W. 77 (1903).

**4.** See Beard v. United States, 158 U.S. 550, 564, 15 S.Ct. 962, 39 L.Ed. 1086 (1895); Gant v. United States, 83 A.2d 439 (D.C.Mun.Ct.App.1951); Josey v. United States, 77 U.S.App.D.C. 321, 135 F.2d 809 (1943); Hopkins v. United States, 4 App.D.C. 430 (1894).

**5.** See, *e. g.*, People v. Keys, 62 Cal.App. 2d 903, 145 P.2d 589 (1944); People v. McCurdy, 140 Cal.App. 499, 35 P.2d 569 (1934); 1 WHARTON'S CRIMINAL LAW § 134 (12th ed. 1932).

**6.** *After drawing the jury's attention to the nine stab wounds, the trial court concluded its instruction on self-defense by stating:*
"[E]ven if he was justified in acting in self-defense, but he used excessive force and went to an extreme to which it was not necessary, that he could have saved himself without killing the deceased, then you must find the defendant guilty."

Then the trial court, after defining the difference, between the crime of murder and the crime of manslaughter, concluded:
"If a killing is committed in a sudden heat of passion, caused by adequate and sufficient provocation, the crime is manslaughter and not murder.
"In order to reduce murder to manslaughter, however, the passion must be of such degree as would cause an ordinary man to act on impulse and without reflection. In addition to great provocation there must be passion and hot blood caused by that provocation. A blow or other personal violence may constitute adequate provocation, provided it is not trivial or slight. Also, if a person acts in self-defense justifiably but uses more force than is reasonably necessary and as a result someone is killed, that person is guilty of manslaughter. For example, if a person can successfully and reasonably defend himself without killing his assailant and yet he kills his assailant, he may be held guilty of manslaughter."

**7.** See Mullen v. United States, 105 U.S. App.D.C. 25, 263 F.2d 275 (1958); Bloch v. United States, 221 F.2d 786, rehearing

■ We consider appellant's objection to the use of his prior statement since the matter may arise at any new trial. These are the pertinent facts. Appellant was arrested shortly after 8:22 p. m., immediately after the fight. He was taken to a precinct house and charged with an assault with a deadly weapon. At 8:41, the police were informed that the victim had died and that appellant should be transferred to the Homicide Squad office. A van picked him up at approximately 8:55. For some reason,[8] appellant did not reach his destination until 9:45. Some time thereafter, he gave a statement to the police.

When appellant took the stand in his own behalf, he testified that the deceased had a knife when he swung at her. On cross-examination, the Government was allowed to use an undescribed document to refresh his recollection on this point, without showing it to defense counsel. Later the Government used that document to refresh his recollection in an attempt to impeach his testimony that he did not remember cutting the deceased. This time, however, the court required that the document be identified. It proved to be appellant's statement to the police, and defense counsel thereupon objected to its use. The court, with the consent of both counsel, held that this statement could be used for im-

peachment purposes even if it was obtained in violation of the *Mallory* rule.[9] This ruling was erroneous.

■ The Supreme Court has held that in some circumstances an accused can be impeached by use of otherwise inadmissible evidence. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). But the Court cautioned that a defendant "must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief."[10] Since then, we have held that an inadmissible statement can be used only when the defendant makes "sweeping claims" that go far beyond the crime charged,[11] is impeached on a statement relating to "lawful proper acts"[12] "collateral" to the issues before the jury,[13] or is questioned about "minor points."[14] In such situations, impeachment of the defendant affects only his credibility, since the truth of the impeaching statement does not itself tend to establish guilt.[15]

■ The Government argues that three claims of appellant at trial could properly be impeached. The first is his claim that the deceased attacked him with a knife. His prior statement

denied, 223 F.2d 297 (9th Cir. 1955); Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612 (1951); Robertson v. United States, 84 U.S.App.D.C. 185, 171 F.2d 345 (1948).

8. It was alleged that the van had "several" stops to make.

9. The trial court stated:
 "[I]f a defendant just denies his guilt on the witness stand he cannot be confronted with a statement in which he admitted his guilt if it is barred by the Mallory Rule. * * * But anyway, we are not confronted with that exception here, this is a matter of detail. * * *"

10. Walder v. United States, 347 U.S. at 65, 74 S.Ct. at 356.

11. This was the situation in *Walder*. See White v. United States, 121 U.S.App.D.C. 287, 290, 349 F.2d 965, 968 (1965).

12. Tate v. United States, 109 U.S.App. D.C. 13, 16, 283 F.2d 377, 380 (1960).

13. *Id.*, 109 U.S.App.D.C. at 17, 283 F.2d at 381.

14. Bailey v. United States, 117 U.S.App. D.C. 241, 242, 328 F.2d 542, 543, cert. denied, 377 U.S. 972, 84 S.Ct. 1655, 12 L. Ed.2d 741 (1964).

15. See Johnson v. United States, 120 U.S. App.D.C. 69, 72, 344 F.2d 163, 166 (1964). In Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960), this court found that "[t]he statement on rebuttal was not inherently more incriminatory than the statement on direct; it was simply a different story but significantly different so far as his *credibility* was concerned." *Id.*, 109 U.S.App.D.C. at 16, 283 F.2d at 380.

was to the effect that she did not have a knife. In White v. United States,[16] we held that, since the nature of the deceased's attack against the defendant was central to his only defense, his testimony on this question could not be impeached by an inadmissible statement.[17]

Appellant's second claim was that he did not remember cutting the deceased. His prior statement was to the effect that he remembered cutting her. This tended to demonstrate that, since appellant was conscious of what he was doing during the fight, his use of excessive force was not "in the heat of the moment." Thus, it was error to allow this impeachment, since the statement, bearing directly on a central issue of self-defense in this case, substantiated appellant's guilt.

For the same reason, the Government should not have been allowed to use appellant's prior statement to impeach his third claim at trial, that he was injured during the fight. His statement to the police was that he was not; and, if this were true, it would tend strongly to show that the attack against appellant was not sufficiently violent to justify his response; and, therefore, he was guilty of using excessive force.

The Government claims that, even if inadmissible, appellant's statement could be used for the limited purpose of "refreshing" his recollection. We disagree. This use of the statement "was as damaging as if the statement had been admitted in evidence." [18]

The Government also argues that, if the *Walder* line of cases precludes impeachment, there was nonetheless no error since the statement was not obtained in violation of the *Mallory* rule. But the District Court, believing that *Walder* permitted use of the statement, conducted no inquiry on the *Mallory* question. On any new trial the issue may be considered upon proper motion.

Finally, the Government asserts that, even if the appellant's statement to the police could not be used for any purpose, its use was not prejudicial since appellant successfully explained any inconsistencies between his claims at trial and his earlier statement to the police.[19] There is no satisfactory assurance that the jury accepted his explanation and we will not engage in the sheer speculation necessary for such a finding.[20]

Reversed and remanded for a new trial in accordance with this opinion.

16. 121 U.S.App.D.C. 287, 349 F.2d 965 (1965).

17. *Accord,* Jones v. United States, 113 U.S.App.D.C. 256, 307 F.2d 397 (1962). The fact that counsel in the present case did not object until he learned that the document was a statement to the police does not render his objection nugatory. It was open to the trial judge after the objection to have taken appropriate remedial action.

18. White v. United States, 121 U.S.App.D.C. 287, 290, 349 F.2d 965, 968 n. 6 (1965).

19. On the question whether the deceased had a knife, appellant tried to explain that the copy of his statement was incorrect and that "when I give [sic] the statement, that I told them that she come at me with a knife and as I was holding her hand at that particular time." He explained his statement to the police that he remembered cutting the deceased by saying, "Yes, I did, [tell them that] by me remembering that by the doctor on the ambulance bandaging her up twice. That is the only way I remember cutting her twice." He claimed he initially told the police he was not injured because "at that time that I give the statement I didn't realize that I had been cut on my little finger and on my arm until I examined my arm and hand good."

20. See Salley v. United States, D.C.Cir., 353 F.2d 897, decided Nov. 24, 1965; United States ex rel. Meers v. Wilkens, 326 F.2d 135, 140 (2d Cir. 1964); McFarland v. United States, 85 U.S.App.D.C. 19, 174 F.2d 538 (1949); Empire Oil and Gas Corp. v. United States, 136 F.2d 868, 872 (9th Cir. 1943).