**Leroy PERRY, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21936.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 27, 1969.

Decided Sept. 15, 1969.

Mr. John A. Shorter, Jr., Washington, D.C., for appellant.

Mr. Sandor Frankel, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

BAZELON, Chief Judge:

Appellant's plea of self-defense to a second degree murder charge was rejected by a jury, which convicted him of the lesser included offense of assault with a deadly weapon.[1] We find merit in his contention that the trial court improperly instructed the jury on the use of excessive force as required by Inge v. United States, 123 U.S.App.D.C. 6, 356 F.2d 345 (1966). In *Inge* we held that 1) one has no right to use excessive force in self-defense, 2) what constitutes excessive force is determined by all the circumstances of a particular situation, and 3) one of the circumstances to consider is whether the defender in the heat of an attack actually entertained a belief which would be unreasonable in one acting in cold blood. The failure of the trial court here to give a clear presentation of this formula creates too much doubt that the jury understood the proper rule; therefore, we reverse.

I

On Sunday, February 26, 1967, Grover Perry, a construction worker with a reputation as a "gorilla,"[2] stole some $200 worth of whiskey from appellant Leroy Perry and his bootlegging partner Paul McCain; he also pulled a gun from his pocket and fired at both appellant and McCain. He was arrested,[3] charged with two counts of assault with a deadly weapon and carrying a dangerous weapon, and held overnight. While Perry was in jail, the appellant broke into the trunk of his car where appellant believed Perry had hidden the whiskey.[4]

After his realease on Monday, Grover Perry went to the tavern where appellant was known to hang out. As he entered, he saw the appellant standing inside. A shot was fired, and appellant chased Grover Perry into the street and down an alley, where he fired additional shots at him. Appellant then fled. Grover Perry was taken to a hospital, where he was treated for about a dozen wounds, none of which appeared serious. Prior to the incident, however, Perry had a scrotal hernia, and when he developed a fever his doctors concluded that a bullet wound in the scrotal sac might have caused this inflammation. They operated on him March 16 and repaired the hernia without difficulty, but on the evening of March 18, he developed chest pains and, despite medical efforts, he died that night.

Appellant testified that he had carried a gun on Monday because he was afraid of Grover Perry. As he was preparing to leave the bar, he found himself facing Perry, who was coming through the doorway with his right hand in his trouser pocket. Believing Grover Perry was going to shoot him, appellant testified that he pulled his own gun and ·fired at Perry, who appeared to be trying to pull something from his pocket as he ran

---

1. The case went to the jury on second degree murder, for which the appellant had been indicted, and on the lesser included offenses of manslaughter and assault with a deadly weapon.

2. This description of Grover Perry was given by two government witnesses, Paul McCain and Detective Ernest Paige, who defined the term to mean, "a person who is rough and he puts people in fear, people are afraid of him."

3. At the police station Grover Perry threatened to beat McCain, who had accompanied the police officers to the precinct. McCain apparently communicated Perry's enraged state to appellant when he saw him later that afternoon.

4. Grover Perry's wife testified that she discovered that the car had been damaged and that McCain told her appellant had pried the trunk open with a crowbar. She told her husband about this when she saw him in jail on Sunday night.

into the street. Appellant chased Perry and fired four more shots before fleeing. He subsequently called the police and arranged to surrender himself.

## II

As part of its instruction to the jury on self-defense, the trial court undertook to instruct the jury on the use of excessive force, clearly a vital issue in a case in which a defendant is accused of having shot an unarmed man.[5] When the judge had finished charging the jury, the Government attorney joined defense counsel in urging him to repair his instruction on excessive force. Appellant's trial counsel read to the judge the instruction he wanted given.[6] When the judge replied "I think the record will indicate I gave that," both attorneys suggested that the judge was mistaken and that he had skipped the second paragraph of the model instruction. The court gave supplementary instructions on three other points, but although the prosecuting attorney again urged him to clarify his instruction on excessive force and the defense attorney read him the relevant part of the charge, the judge continued to refuse any additional instruction on this point.

In deciding whether an improper verdict was rendered, we must examine the charge as a whole to determine whether it was likely to mislead the jury. This is not a case in which the defendant failed to object to part of the charge, the prejudicial effect of which was cured by another part. *See, e. g.,* United States v. Thurman, 134 U.S.App.D.C. 184, 185, 417 F.2d 752, 753 (1969); Howard v. United States, 128 U.S.App.D.C. 336, 340, 389 F.2d 287, 291 (1967). Here appellant, seconded by the prosecution, repeatedly objected to the confusion concerning the use of excessive force. Moreover, while the trial court correctly informed the jurors that they might consider "all the circumstances," no part of the instruction illumined the boundaries of reasonable, as opposed to unreasonable, resistance.[7] The jury was left to un-

---

5. In a recent second degree murder case before this court in which the defendant claimed to have shot his assailant in self-defense, the Government contended that the defendant there could also have used less force in countering the decedent's aggression. Judge Robb, writing for a unanimous panel, reversed the conviction on the grounds that the jury could not reasonably find that the defendant exceeded the bounds of lawful self-defense. United States v. Bush, 134 U.S.App.D.C. 67, 416 F.2d 823 (1969). While we are not prepared to go that far in this case, appellant was entitled to a clear and precise instruction on what force the law allows one to use in self-defense. Inge v. United States, 123 U.S.App.D.C. at 9, 356 F.2d at 348.

6. Counsel suggested that the court give the instruction which the Junior Bar Association modeled on *Inge:*

   Even if the other person was the aggressor and the defendant was justified in using force in self defense, he would not be entitled to use any greater force than he had reasonable grounds to believe and actually did believe to be necessary under the circumstances to save his life or avert serious bodily harm.

   In determining whether the defendant used excessive force in defending himself, you may consider all the circumstances under which he acted. The claim of self-defense is not necessarily defeated if greater force than would have seemed necessary in cold blood was used by the defendant in the heat of passion generated by an assault upon him. A belief which may be unreasonable in cold blood may be actually and reasonably entertained in the heat of passion.

   Junior Bar Association, Criminal Jury Instruction No. 130 (1966).

7. Given the testimony in this case, a clear definition of the permissible limits of resistance was obviously of critical importance. Although Grover Perry was reaching in his pocket for what the appellant testified he thought was a gun, no gun was found on or near the deceased and it would have been reasonable for the jury to conclude that he was unarmed. On the charge they were given, the jurors might well have concluded that any use of a gun against an unarmed man amounted to excessive force, which they had been instructed negated the claim of self-defense.

guided speculation, when it should have been told that the claim of self-defense is not necessarily defeated because the defendant, acting in the heat of passion brought on by an assault, used more force than would have seemed necessary to a calmer mind. "A belief which may be unreasonable in cold blood may be actually and reasonably entertained in the heat of passion." Inge v. United States, 123 U.S.App.D.C. at 9, 356 F.2d at 348. *Cf.* Brown v. United States, 256 U.S. 335, 344, 41 S.Ct. 501, 65 L.Ed. 961 (1921). Therefore, since the jury was not sufficiently instructed on the basic if not the only issue in the case, appellant's conviction must be reversed and the case remanded for a new trial. *Cf.* Bollenbach v. United States, 326 U.S. 607, 613, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

Reversed and remanded.