Roy Sylvester HUNT

v.

J. D. COX, Superintendent of the Virginia
State Penitentiary.

Civ. A. No. 84–69–R.

United States District Court,
E. D. Virginia,
Richmond Division.

April 21, 1970.

Roy Sylvester Hunt, pro se.

Reno S. Harp, III, Richmond, Va., for respondent.

## MEMORANDUM

MERHIGE, District Judge.

Roy Sylvester Hunt was convicted by a jury in the Hustings Court of the City of Richmond, Virginia, of first degree murder on May 18, 1967. He now alleges constitutional error in that trial and seeks his release by habeas corpus.

Hunt asserts three defects in his conviction. First, he objects to an investigating police officer's testimony concerning in-custody admissions. Secondly, he attacks the admissibility of a fellow prisoner's testimony as to incriminatory statements. Last, he alleges that the prosecutor's arguments unlawfully stressed his insistence, when arrested, on his right to remain silent.

■ The trial record is before the Court and represents a full disclosure of all material facts necessary to consider the petition; hence no additional hearing is required. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The Commonwealth's case rested principally on the testimony of one Rowe, a convicted felon to whom Hunt allegedly admitted his complicity in an episode of robbery and killing from which the murder charge arose. Efforts to tie Hunt to the scene with fingerprint evidence were unavailing.

■ The defense was alibi. Through numerous witnesses, the petitioner attempted to establish that he had been swimming with friends at the time of the incident, the afternoon of August 23, 1966. The case therefore had to be resolved on the basis of the jury's judgments of credibility. This Court, of course, cannot substitute its own views on such matters for those of the jurors. Nor does it yet appear that the sufficiency of the evidence is a matter subject to federal inquiry. Bunn v. Commonwealth, No. 13,449, mem. decis. (4th Cir. Oct. 21, 1969); compare In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Thus to the extent that the petitioner complains that the weight of the evidence was insufficient to convict, his application will be denied.

■ Suggestions that the witness Rowe was placed as a police spy in the petitioner's cell pending trial in order to elicit admissions by disguised interrogation, and general allegations that the prosecution knowingly used false testimony, have not been presented to Virginia's highest court. These contentions will be dismissed without consideration for failure to exhaust available state remedies.

The more substantial claims involve alleged violations of constitutional doctrine governing in-custody interrogation and the use of the fruits thereof.

Errors assigned in Hunt's petition to the Virginia Supreme Court of Appeals for a writ of error included the introduction by the prosecution of statements which placed him at the scene of the murder at an uncertain date prior to the crime. These admissions were secured during an interrogation which occurred after the defendant had earlier refused to speak and had requested the appointment of an attorney. In his petition Hunt also attacked the trial court's "permitting the prosecution to suggest in cross-examination of the defendant and to argue to the jury that the defendant's election to make no statement at the time of his arrest was an admission of guilt."

The objection to the use of the petitioner's statement elicited at a third interrogation is without merit. On the day of his arrest Hunt was informed of his rights and twice declined to participate in an interview (Tr. 186–87). Some days afterward, according to Detective Gery's testimony, he was approached again, and Hunt admitted that he had previously been at the scene of the murder and had conversed with the victim (Tr. 187–88). The trial Judge was most insistent that Hunt had to have been advised of his rights again prior to that particular interrogation which produced a statement (Tr. 191–92) and that any waiver must have been voluntary (Tr. 204). The state court found, on adequate evidence, that such a procedure was followed (Tr. 193–95, 199).

■ The petitioner relies upon language in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which can be construed to bar such successive interrogations:

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. * * * [A]ny statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. * * * If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. Miranda v. Arizona, *supra*, 473–474, 86 S.Ct. 1627–1628.

Despite the presumption of involuntariness which the Court seems here to establish, it appears that police are not precluded from attempting a second interview with a prisoner so long as no trace of coercion from prior inquiries remains to cast doubt on the willingness of a waiver of rights. Dicta in Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a companion case to *Miranda*, indicate that admissions could constitutionally be made even after a prior interrogation which violated the guidelines for custodial questioning, so long as the second interview is sufficiently remote in time and place and proper warnings are given. Here the admissions were made several days after the first refusals; therefore there is support for the state court's implicit finding that any coercive influence had subsided. As the interrogating officer described them, the circumstances were quite consistent with voluntary waiver (Tr. 186, 193, 197).

The prosecution's use of evidence that the petitioner, when arrested, insisted on his right to silence merits this Court's careful consideration as to the validity of the resulting conviction, and for the reasons hereinafter discussed renders the same void.

The context in which this fact came to light at trial must be scrutinized and distinguished from the use to which this evidence, perhaps properly introduced, was later put.

The petitioner elected to testify in his own defense, and stated that on the afternoon of the murder he had been swimming with friends (Tr. 167). They left at about noon and stayed until dark (Tr. 170).

On cross-examination the prosecutor, Mr. Kelley, attacked Hunt's alibi by testing his recall of other times and events during August and September. Then he focused on the date of the petitioner's arrest. Questioning turned to whether Hunt had put forward his alibi to the police:

Q. Now, when you were arrested, were you arrested within say two or three weeks of August the 23rd?

A. I was arrested in two or three weeks?

Q. Uhhuh, within two or three weeks?

A. I arrested at the last part of August.

Q. All right, now, did you tell the Police that you had been swimming on August the 23rd or that—first part of that week?

A. Yes, I did.

Q. You did?

A. Yes, I did.

Q. Which officer did you tell?

A. It was—Oh, I can't remember which one, if it was Gery or Martin.

Q. Well, look at this—look at this officer right here, did you talk to that officer?

A. Yes, I talked to him.

Q. Did you tell him you had been swimming?

A. Yes, I told him I had been swimming.

Q. Where did you tell him at?

A. I told him I went to swimming at Pocahontas State Park.

Q. No, I know, but where did you talk to the officer and tell him that you had been swimming, where were you when you told him that?

A. In Petersburg.

Q. In Petersburg?

A. Yes.

Q. You are sure of that now?

A. Yes.

Q. What else did you tell the officer?

A. I told him I was in swimming, that's all I tell him, and he kept on asking me questions and I told him I rather see a counsel.

Q. You didn't want to answer his questions before you talked to a lawyer?

MR. RITCHIE: Your Honor, I think the Court should explain to the Jury—

THE COURT: Well, Gentlemen, of course he has the right to refuse to answer any questions in the absence of his counsel, he has that right, all right, go ahead.

MR. KELLEY: Yes, sir, and I'd like the Court also to explain that he is entitled to talk to the Police and give an explanation if he wanted to.

THE COURT: Oh, of course, he can if he desires, or is willing to do so, he may do it, may waive it.

Q. Now, in view of what the Court has just told the Jury, I repeat my question to you—

MR. RITCHIE: Your Honor, I object to his line of questioning because it seems to me the Commonwealth is trying to, in effect, violate the Constitutional right of the defendant by implying that there is some guilt in connection with—

THE COURT: I've instructed the Jury that he has that right and there's no implication because he's got a right to remain silent or he can speak, if he cares to, voluntarily.

MR. KELLEY: No question about that, Judge.

THE COURT: All right.

MR. KELLEY: I'm just asking him why he didn't, that's all.

THE COURT: Go ahead, Mr. Kelley.

Q. Why didn't you tell the police what you told us here today?

MR. RITCHIE: Your Honor, I'd like to show an objection to that question.

MR. KELLEY: Well, Judge, it's obvious he doesn't want to answer, that's all right.

THE COURT: I think you—

MR. KELLEY: I will withdraw the objection.

THE COURT: I sustain your objection.

MR. KELLEY: I'll withdraw the question.

(Tr. 180–83).

After the petitioner's case, the prosecution called Detective Gery, the arresting officer, on rebuttal. He testifed that Hunt had been properly advised of his rights. These questions followed:

Q. Did he tell you that he had been swimming the week in August we are referring to?

A. He made no statement to me whatsoever.

Q. Made no mention of swimming at all?

A. No, sir, neither time, at 10:55 a. m. in Petersburg or at 12:00 p. m. in the

Police Headquarters, City of Richmond (Tr. 187).

The closing arguments by both Commonwealth's Attorneys took full advantage of this disclosure:

He stated that he did tell the police that he had been swimming, and he further stated that he had never been in Thomas Motor Lines, but then when the Commonwealth offered Detective Gery as a rebuttal witness, Detective Gery stated that on September 7th, 1966, at 10:50 a. m. or p. m., this gentleman was arrested, his rights were explained to him, there was no mention whatsoever of swimming. Now, wouldn't an innocent man state right away where he was the day an occurrence that he was accused of happened? Remember, you are the triers of fact, you determine who to believe and who not to believe. (Tr. 229).

Counsel for the petitioner made no reference in his argument to Hunt's testimony that he had asserted his alibi defense when first confronted with the murder charge. The closing prosecution argument, however, stressed the petitioner's insistence on his right to silence, presenting it clearly as an admission of guilt:

We are all reasonable men I hope, we hope our juries are composed of reasonable men, they live in a society, they know what goes on, they understand human nature. A police officer serves a murder warrant on a man in Petersburg, a Richmond Police Officer. What is the natural thing for the man to do when he sees the charge. "Officer, you mean I'm charged with murder on the 23rd of August, well, let's see, on the 23rd of August I went swimming three times that week so check with so and so and so and so and they can tell you where I was, even

got a speeding ticket,"—try to clear yourself.

"Officer, try to go out and get some evidence, I didn't do this thing." What did this defendant do? He clammed up, made no statement, no denial, no statement. You are entitled to consider that, gentlemen. Mr. Ritchie said you didn't have any other evidence but Rowe, that is evidence—that is evidence of the strongest type, human nature. (Tr. 254–55).

Specific and strenuous objection was made to this form of argument on constitutional grounds (Tr. 259–66). Counsel for the petitioner carefully distinguished between the use of evidence of Hunt's prior silence to rebut the defendant's version which tended to shore up his alibi, and the use of his silence as an admission of guilt. No curative instruction was, however, given.

Constitutional error lies in such arguments. Consequently it is not necessary to consider whether, standing alone, the introduction of evidence of a defendant's refusal to talk, when his testimony has put in issue just what he said while in custody, violates his *Miranda* privilege.

Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), permitted the introduction of illegally seized and otherwise inadmissible tangible evidence to rebut a defendant's sweeping denials of prior criminal involvement. Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960), applied the principle to a defendant's statements. Subsequent cases in the Courts of Appeals applying pre-Miranda law substantially narrowed the extent to which a defendant's silence or unlawfully seized admissions could be used to impeach or rebut his testimony.[1] When statements have been

---

[1] "[W]e have held that an inadmissible statement can be used only when the defendant makes 'sweeping claims' that go far beyond the crime charged, is impeached on a statement relating to 'lawful proper acts' 'collateral' to the issues before the jury, or is questioned about 'minor points.' In such situations, impeachment of the defendant affects only his credibility, since the truth of the impeaching statement does not itself tend to establish guilt." Inge v. United States, 123 U. S.App.D.C. 6, 356 F.2d 345, 349 (1966) (footnotes omitted).

*See also* other decisions applying pre-*Miranda* standards. United States ex

offered for impeachment purposes which were secured in violation of the prescripts of *Miranda*, most Courts of Appeals have held or intimated that the more recent interpretation of the reach of the Fifth Amendment pro tanto overruled *Walder*.[2] Moreover, it would seem that Miranda explicitly barred the introduction of evidence of a defendant's exercise of his right to silence:

> In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. Cf. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 1625, 12 L.Ed.2d 653 (1964) * * *. Miranda v. Arizona, *supra*, 384 U.S. 468 n. 37, 86 S.Ct. 1625.[3]

■ The manner in which the petitioner's silence in the instant case came before the jury, however, may come within an exception to the more or less generally accepted rule that *Miranda* has partially overruled *Walder*. Most courts faced with the question have concluded that the prosecution may rebut, with otherwise illegal evidence, a defendant's testimony as to the statements which he made.[4] Thus when a defendant attempts to buttress his trial testimony against an express or implied charge of recent fabrication he may not freely do so by distorting or manufacturing in-custody statements.

■ Assuming that under this rule the testimony of Detective Gery was properly admitted after the petitioner had sworn that he presented his alibi when first apprehended,[5] it does not follow that the prosecutors could comment without restriction on such evidence. That Hunt did not present his defense at the earliest possible moment, contrary to his trial testimony, may legitimately be provable in order to undermine the credibility of the alibi. It is another thing entirely to make use of an accused's failure to speak, to offer any explanation or

rel. Hill v. Pinto, 394 F.2d 470 (3d Cir. 1968); Dillon v. United States, 391 F.2d 433 (10th Cir.) cert. den., Duggar v. United States, 393 U.S. 825, 89 S.Ct. 87, 21 L.Ed.2d 96, 393 U.S. 889, 89 S.Ct. 208, 21 L.Ed.2d 168 (1968); Woody v. United States, 126 U.S.App.D.C. 353, 379 F.2d 130, cert. den. 389 U.S. 961, 88 S.Ct. 342, 19 L.Ed.2d 371 (1967); United States v. Curry, 358 F.2d 904 (2d Cir.), cert. den. 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966); White v. United States, 121 U.S.App.D.C. 287, 349 F.2d 965 (1965); Johnson v. United States, 120 U.S.App.D.C. 69, 344 F.2d 163 (1964); Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965).

2. Agius v. United States, 413 F.2d 915 (5th Cir. 1969); Fowle v. United States, 410 F.2d 48 (9th Cir. 1969); Proctor v. United States, 131 U.S.App.D.C. 241, 404 F.2d 819 (1968); United States v. Fox, 403 F.2d 97 (2d Cir. 1968); Blair v. United States, 130 U.S.App.D.C. 322, 401 F.2d 387 (1968); Groshart v. United States, 392 F.2d 173 (9th Cir. 1968); Wheeler v. United States, 382 F.2d 998 (10th Cir. 1967).

3. *See also*, Fowle v. United States, 410 F.2d 48 (9th Cir. 1969), holding that evidence of a defendant's failure to assert the defense on which he eventually relied on trial when first arrested was inadmissible for impeachment both as a matter of federal evidentiary law and on constitutional grounds.

4. Fowle v. United States, 410 F.2d 48, 55 (9th Cir. 1969); United States v. Fox, 403 F.2d 97, 103 n. 4 (2d Cir. 1968); United States v. Vanterpool, 394 F.2d 697, 701 (2d Cir. 1968) (concurring opinion); Groshart v. United States, 392 F.2d 173, 178 n. 4 (9th Cir. 1968); United States v. Armetta, 378 F.2d 658 (2d Cir. 1967).

5. It does not appear, in this case, that the prosecutor induced the petitioner to testify, by implication, that he made a statement favorable to himself, in order to clear the path for rebuttal evidence. *Compare* White v. United States, 121 U.S.App.D.C. 287, 349 F.2d 965 (1965). Moreover, in this case the questioning on rebuttal was commendably carefully phrased. The detective was not asked whether Hunt refused to talk; he was asked whether he had offered the alibi. The witness' answer disclosed that the petitioner maintained silence.

protest, as an admission of guilt of the crime charged. The admissibility of evidence depends upon the purpose for which it is offered. When it emerged on trial, Gery's testimony may well have been fair rebuttal to restrict Hunt's embellishment of his defense. In argument, however, the evidence was squarely presented to the jury for a much broader, more damaging purpose—proof of guilt. "No formal offer of proof is made as in other situations; but the prosecutor's comment and the court's acquiescence are the equivalent of an offer of evidence and its acceptance." Griffin v. California, 380 U.S. 609, 613, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965).

*Griffin* held that a prosecutor's argument, uncorrected and indeed amplified by an instruction from the Court, that the jury should infer guilt from a defendant's refusal to take the stand placed an impermissible burden on the exercise of a constitutional privilege. *Miranda* extended the protection of the Fifth Amendment to those times prior to formal trial when custodial interrogation may give rise to damaging admissions, and the passage from *Miranda* cited above establishes that, by analogy from *Griffin*, silence in custody may not be used to establish guilt.

In *Griffin* the defendant's refusal to testify was unavoidably evident to the jurors, who had observed him throughout the trial. Here the fact of Hunt's silence may similarly have come before the jury legitimately. In each case, also, the jury may privately have inferred guilt from silence, a perhaps unavoidable conclusion when one with an opportunity to answer charges fails to do so. Nevertheless, the crux of the rule of *Griffin* is that, however natural that line of thought may be, it violates the Constitution to present it to the jury as a judicially approved rule of the law of evidence.

> What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another. Griffin v. California, *supra*, 614, 85 S.Ct. 1233.

In *Griffin* the arguments were accompanied by a jury instruction of the same tenor; in this case there was none. The arguments of counsel, however, left little to the jurors' imagination, and the Court acquiesced. The result cannot be distinguished. In each case facts known to the jury for one purpose were unconstitutionally endorsed as evidence of guilt.

█ The conviction pursuant to which the petitioner is detained is invalid, and the application for a writ of habeas corpus shall be granted.