**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bertram S. ROSS, aka Bert Ross,
Defendant-Appellant.**

**No. 17062.**

United States Court of Appeals
Sixth Circuit.

March 2, 1967.

---

228

William R. Willis, Jr., Nashville, Tenn., Alfred H. Knight, III, Nashville, Tenn., on brief, Hooker, Hooker & Willis, Nashville, Tenn., of counsel, for appellant.

Lyman Ray Patterson, Asst. U. S. Atty., Nashville, Tenn., Gilbert S. Merritt, Jr., U. S. Atty., Nashville, Tenn., on brief, for appellee.

Before O'SULLIVAN and CELEBREZZE, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal from a judgment of conviction in the United States District Court for the Middle District of Tennessee. The appellant, Bertram S. Ross, was indicted on a one-count indictment for violation of the Federal Travel Act, Section 1952,[1] Title 18, U.S.C. The appellant waived jury trial and was tried to the court. Upon being found guilty he was placed on probation for two years and sentenced to pay a fine of $5000.

The indictment,[2] stripped of its formal language, charges that the appellant on or about December 28, 1964, used the mail or caused others to mail a sports publication from Chicago to Nashville with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on a business enterprise involving gambling, in violation of Tennessee law, and that thereafter he performed acts to carry

1. "(a) Whoever * * * uses any facility in interstate * * * commerce, including the mail, with intent to—
"(3) * * * promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs * * * (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling * * * offenses in violation of the laws of the State in which they are committed * * *."

2. "On or about the 28th day of December, 1964, in the Nashville Division of the Middle District of Tennessee, the defend-

ant, Bertram S. Ross (also known as Bert Ross), did use and did wilfully cause others to use a facility in interstate commerce, that is, he did wilfully cause a sports publication to be mailed from Chicago, Illinois, to Nashville, Tennessee, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving gambling, in violation of Tennessee Code Ann., Section 39–2032, of the Statutes of Tennessee, and that thereafter the defendant did perform and attempt to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of the said unlawful activity.
"In violation of Title 18, United States Code, Sections 1952 and 2."

out his intent. In a bill of particulars, the publication alleged in the indictment was identified as follows:

"1. The name of the publication is the Angel-Kaplan Sports Publication. The date if (sic) issue is unknown, but is Volume XXXV—'Special Bowl Edition'; as the description, the publication contains a schedule of bowl games for 1964–65, a photostatic copy of which is attached hereto."

The evidence is virtually undisputed and the question is whether it is sufficient to sustain the conviction. The appellant did not testify at the trial nor was any testimony submitted on his behalf. The testimony of the appellant on the motion to suppress evidence was made a part of the record of the trial without objection of counsel for the appellant.

On January 11, 1965, Francis W. Norwood and Bill Sheets, special agents of the FBI, knowing that the appellant had a Federal Wagering Tax Stamp, went to his residence to interview him with respect to gambling. The appellant was not home and as the agents walked across the rear of his lot, after viewing a neighboring house, they discovered the publication, which is the subject of the indictment, in an overturned garbage can. They found a number of papers which were identified as "Angel-Kaplan Sports Publications." Some were lying on the ground and some were in an envelope bearing a postmark, "Chicago, Illinois, December 28, 1964." The envelope was addressed to B. Ross at a post office box in Nashville, Tennessee. These publications had schedules of football games that were played during the latter part of December and the early part of January, including bowl games played on New Year's Day.

They took these publications with them and later, on or about March 12, 1965, Agent Norwood and Special Agent Charles J. Honeter interviewed the appellant concerning them. The appellant said he had two businesses, one of which was booking bets on ball games. He said that he had had a Federal Wagering Tax Stamp for the year ending June 30, 1964, and one for the current year running to June 30, 1965. He further said that he had been in the business of accepting wagers during all of this time. This testimony concerning the business of the appellant was corroborated by the introduction of Wagering Excise Tax Returns for the period from July 1, 1963, to March of 1965.

On the motion to suppress evidence, the appellant identified the document which was the subject of the indictment and said that he had had it in his possession in January and that it was a schedule of certain bowl and professional football games. The appellant testified that he had been getting these publications for six or eight months. The publications were referred to as "run down sheets" and the appellant admitted to the special agents on the interview that he subscribed to them. He received them for each particular sports season and he was presently getting them for the basketball season. He ordered them through order blanks that Angel-Kaplan sent out through the mail and he paid twelve cents a copy for them. He further admitted to the special agents that he used them for keeping up with the games that were being played. He could make up this schedule of games himself but it was more convenient to use the ones that were already made up.

Witness Norwood was shown Government's Collective Exhibit No. 1, introduced at the hearing on the motion to suppress, and identified it as containing the documents that he and Bill Sheets took from the appellant's premises on January 11, 1964. He further identified one of the documents as containing a schedule of bowl games called "Special Bowl Edition, Volume XXXV" as described in the Bill of Particulars.

Considering this testimony in the terms of the charge in the indictment, we find that it supports the District Court's judgment of guilty. The appellant used the mail, a facility of interstate commerce, and caused it to be used on or about December 28, 1964, for the receipt

of Angel-Kaplan Sports Publications, including the Bowl Edition described in the indictment. This is evidenced by his testimony that he had the one in question in his possession in January 1965, that he was a subscriber to the publication at the time and the inference that can be drawn from finding the envelope addressed to the appellant on his premises. That the appellant was in the business of booking bets and wagers on athletic games in season is beyond question. This is shown by his own admission and by his Federal Wagering Excise Tax Returns. The Court takes judicial notice that this form of gambling is in violation of the laws of Tennessee. Since he was in this business of promoting and carrying on gambling through taking wagers and bets on games continuously from July 1963, it is abundantly clear that he performed acts of promotion and gambling subsequent to December 28, 1964.

 The one remaining question is whether the appellant used the document described in the indictment to facilitate the promotion and carrying on of his business. While we hold that it is not necessary to show the use of this document in the taking of a specific wager or bet, we do hold that the evidence must show its use to facilitate the subsequent acts of state law violation. From all of the evidence in this case to the effect that the appellant was a subscriber to the publication, that he was continuously in the business of taking wagers and bets, that he took bets on games in season and that he used this publication for his convenience in his business, the inference, in absence of any evidence to the contrary, is inescapable that he used the document described in the indictment for the bowl games of the 1964–65 season. The situation here is essentially similar to United States v. Azar, 243 F.Supp. 345, (E.D. Mich.,S.D.) in which District Judge Talbot Smith said, at p. 350:

> "In short, here is a device, the tip sheet, serving a purpose of catering to those wishing to participate in the numbers racket. It suggests and advises as to successful participation in the unlawful operation itself. It is stipulated, indeed, that it actually does both promote and stimulate such gambling. Upon these facts it would be a perversion of both language and logic for us to hold that such a device does not 'facilitate' the unlawful operation the promotion of which it serves, and the furtherance of which it stimulates."

See also, United States v. Ryan, 213 F. Supp. 763 (D.C.Colo.); United States v. Teemer, 214 F.Supp. 952 (N.D.W.Va.).

Appellant's contention that his extra-judicial admissions to Agent Norwood cannot be considered because they were uncorroborated, United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 is unfounded. Substantial evidence to corroborate such admissions is found in appellant's possession of Federal Wagering Tax Stamps and his filing of monthly Wagering Excise Returns, in the fact that an envelope containing the run down sheets addressed to the appellant was found on his premises, and in appellant's own testimony given under oath at the hearing on the motion to suppress evidence.

The judgment of conviction is affirmed.