Billy Eugene **DILLON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Michael Bruce **BARTELLO**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

William O. **DUGGAR**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Kenneth **ENDICOTT**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Nos. 9131, 9133, 9132, 9134.

United States Court of Appeals
Tenth Circuit.

March 28, 1968.

Rehearing Denied April 12, 1968.

Neil Howard Fink, Oak Park, Mich. (Joseph W. Louisell and Ivan E. Barris, Detroit, Mich., on brief), for appellants Dillon, Duggar and Bartello.

Fred M. Bruner, Dallas, Tex. (Jerry Lastelick, Dallas, Tex., on brief), for appellant Endicott.

Guy L. Goodwin, Asst. U. S. Atty., Wichita, Kan. (Newell A. George, U. S. Atty., Wichita, Kan., on brief), for appellee.

Before PICKETT, HILL and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

The appellants were charged in five counts with violation of 18 U.S.C. § 1952, commonly called anti-racketeering legislation which was enacted by Congress in 1961. In count VI each appellant was charged also with conspiracy, in violation of 18 U.S.C. § 371.

Endicott was found guilty on all counts; Bartello and Dillon were found guilty on counts II through VI; Duggar was found guilty on count VI, conspiracy. Motions for a new trial were filed and denied. Sentences were pronounced and this appeal followed.

Endicott charges error in the admission of evidence of the crime of abortion. It is alleged the crime of abortion is not within the unlawful activities proscribed in 18 U.S.C. § 1952. Dillon charges he was not arraigned without unnecessary delay as required by Fed.R. Crim.P. 5(a), and his confession was not admissible because his constitutional rights were violated. The error assigned by Duggar is the admission of testimony relating to statements made by him after

his arrest which were allegedly fruits of interrogations made in violation of the Fourth and Fifth Amendments. Bartello charges error in admitting testimony from a deposition of a co-conspirator, who died before the trial, which deposition by innuendo exposed Bartello's prior convictions. Endicott, Bartello and Duggar also allege error in the denial of their motions for separate trials.

The scheme charged was an attempt on the part of the accused to establish and carry on gambling and bribery in the State of Kansas. Also a part of appellants' scheme, but not charged in the indictment, was the establishment of an abortion ring.

The mode of gambling to be established by appellants was bingo. Bingo is illegal in Kansas; therefore, in order to set up and operate the scheme it was necessary to have police protection. Several police officers identified appellants as persons who offered bribes, identified their associates and described the scheme to them. Dillon, who was an investigator on the payroll of the Attorney General of Kansas, was used to assure the persons contacted that the scheme had been cleared with the Attorney General's office. The testimony of local realty managers related efforts made by appellants to rent locations for bingo games to be operated for charitable purposes.

The testimony of a locally known convicted abortionist disclosed a plan to set up a referral operation under which the witness and other physicians would direct abortion referrals to appellants' abortion clinic in Wichita, Kansas. Bartello was to be the "contact man" who would take the women to be aborted. Duggar, a medical doctor from Detroit, Michigan, was to provide medical attention in the event serious health problems arose or hospitalization was required.

We consider appellant Endicott's objection to the evidence of abortion offered and received during the trial because it relates to the scope of the statute under which the appellants were indicted.

The statute is a trifid declaration of offenses with a bifarious definition of "unlawful activity". The indictment and prosecution in this case directs itself to 18 U.S.C. § 1952 which provides in part:

"(a) Whoever travels in interstate * * * commerce * * * with intent to—

(3) * * * promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of an unlawful activity, and thereafter performs or attempts to perform any of the acts specified in [subparagraph] * * * (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling * * * or (2) * * * bribery * * * in violation of the laws of the State in which committed or of the United States."

Endicott contends it was error to admit evidence of the crime of abortion because the crime is not within the purview of 18 U.S.C. § 1952. It is also contended evidence of abortion "did not prove intent, did not show a course of conduct or did not tend to prove the crimes charged in the indictment." We cannot agree with these contentions. The reason or motive for the bribery was immunity from prosecution for gambling by lottery (bingo) and abortion, both violations of the laws of Kansas. The intent to condemn the violation of state law as contained in 18 U.S.C. § 1952 is discussed in United States v. Miller, 379 F.2d 483, 488 (7th Cir. 1967). The statute has been discussed and interpreted by several of the circuits. United States v. Ross, 374 F.2d 227 (6th Cir. 1967); United States v. Hawthorne, 356 F.2d 740 (4th Cir. 1966); Marshall v. United States, 355 F.2d 999 (9th Cir. 1966); United States v. Zizzo, 338 F.2d 577 (7th Cir. 1964). In our circuit the District Court of Colorado discussed the statute in United States v. Ryan, 213 F.Supp.

763 (D.Colo.1963). All of the courts have identified the purpose of Congress to stamp out racketeering which flourished because of gambling (lotteries) and bribery, together with other evils identified in the section.

Although the crime of abortion is not specifically mentioned in 18 U.S.C. § 1952, the crime of bribery is, and in order to prove the violation of the Kansas bribery statute it was necessary to show what the bribes sought to protect. "It is elementary that the evidence of other offenses is not admissible in the trial of a criminal offense. This rule is not applicable if the evidence is introduced to prove intent or to show a course of conduct, or tends to prove the crime charged. [Citations omitted]." Jones v. United States, 251 F.2d 288, 294 (10th Cir. 1958). Evidence of abortion was material to the issues being tried. Woodland v. United States, 347 F.2d 956, 958 (10th Cir. 1965).

■■ Dillon urges that the admission of his statement was error because he was not "[taken] without unnecessary delay before the nearest available commissioner." [1] This is the only ground urged; therefore, our question is narrowed to whether or not the delay was unnecessary. The governing principles of law with a full discussion of the controlling precedent setting forth fully and adequately the rules which control this point on appeal are contained in Walton v. United States, 334 F.2d 343 (10th Cir. 1964), cert. denied Comley v. United States, 379 U.S. 991, 85 S.Ct. 706, 707, 13 L.Ed.2d 612; Zamora v. United States, 369 F.2d 855 (10th Cir. 1966).

Dillon, on the request of city police, went to the police station at 5:25 P.M. and was placed in an interview room. At 6:17 P.M. agents of the Federal Bureau of Investigation went into the room and advised Dillon of the charges pending against him and of his constitutional rights. He voluntarily gave them a statement. The record reveals the officers were diligently searching for a commissioner during this period and located one at 10:00 P.M. who immediately came to the police station and arraigned Dillon at 10:30 P.M. This court has recognized that it is now settled that if an arrested person makes an incriminating statement after an arresting officer has failed to comply with Rule 5(a) the statements are not admissible even though voluntarily made. Walton v. United States, supra at 346 of 334 F.2d. While the officers were attempting to locate the commissioner, Dillon learned that a search warrant for his home had been obtained and he voluntarily consented to the search and told the officers of his association with the other defendants. The record reflects that the objections to the introduction of the statements were not based upon a violation of Fed.R.Crim.P. 5(a) but were based on its effect upon the other defendants and a contention that it was not voluntarily made.

We conclude the delay was not unnecessary because the government has met the burden of proving they diligently sought a commissioner and as soon as one was available the agents took the accused before him for arraignment. Although the trial court did not have the specific question of unnecessary delay before it, because the issue was not raised,[2] it did hear testimony regarding the diligent search for a commissioner and under all the circumstances admitted the statements into evidence. The specific facts of this case, together with the rules heretofore adopted by this court in Walton v. United States, supra, direct us to the conclusion there was no unnecessary delay and, therefore, the statement was admissible. Butterwood v. United States, 365 F.2d 380, 384–385 (10th Cir. 1966); Stille v. United States, 354 F.2d 233 (10th Cir. 1965).

■■ It is further contended by Dillon that after counsel had been retained for him the F.B.I. agent interviewed him

---

1. Fed.R.Crim.P. 5(a).

2. Wheeler v. United States, 382 F.2d 998, 1001 (10th Cir. 1967).

without his counsel being present and this procedure tainted the admissions. We do not agree. The fact that Dillon's counsel was not present at the time the admissions were confirmed does not ipso facto render them inadmissible. Butterwood v. United States, supra at 383 of 365 F.2d. The presence of counsel can be waived as well as demanded. Certainly, if an accused can waive the right to counsel when that right first attaches, Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942); Leighton v. Cox, 365 F.2d 122 (10th Cir. 1966), he can waive the right to have counsel present subsequent to counsel's appointment or retainment. The concern in each instance is that the waiver be intelligently made. Id. The record here indicates the F.B.I. agent again advised Dillon of all his constitutional rights before he proceeded with the re-interview. It is clear the re-interview was to give the accused an opportunity to confirm or change his voluntary statement of the day before and was not a sustained question-and-answer interrogation. The situation is similar to that in Otney v. United States, 340 F.2d 696 (10th Cir. 1965) (concurring opinion), because Dillon had been advised of his right to counsel when previously interviewed by the F.B.I. agent, when arraigned before the United States Commissioner, and again by the F.B.I. agent before the re-interview. In view of Dillon's official position, his intelligence, and experience in the law enforcement field and apparent good mental condition, we cannot say his ability to determine whether he should confirm the statements already made was unfairly undermined or the confirmation was unfairly adduced.

■■ Appellant Dr. Duggar, a medical doctor with a specialty in obstetrics and gynecology, contends his constitutional rights were violated because the Wichita Police denied his requests to make phone calls and to contact an attorney, vigorously interrogated him and denied him food and rest. Such conduct allegedly took place between the time Duggar was arrested at 5:30 P.M. on September 23, 1964, and 9:25 P.M. of the same day, at which time an F.B.I. agent read the federal complaint to Duggar and advised him of his constitutional rights. The only evidence of the alleged misconduct on the part of the Wichita Police is the testimony of Duggar himself. It is undisputed that the Wichita Police advised Duggar at the time of his arrest that there was a federal process outstanding for his arrest. It is also undisputed the F.B.I. agent advised Duggar of his rights. No statements of any kind were taken by the Wichita Police. The only statements made by Duggar were those made to the F.B.I. agent. Duggar contends that it was error to permit the government to impeach his testimony by using the statements.

Duggar took the stand in his own behalf; on cross-examination Duggar was asked if he had made certain statements to the F.B.I. subsequent to his arrest. Upon objection by Duggar's counsel, the court held a hearing outside the presence of the jury and on the basis of the evidence introduced found that Duggar's rights had not been violated and that the government could inquire as to whether or not statements were made to the F. B.I. agent. The court subsequently permitted the agent to testify in rebuttal regarding the statements made.

Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694 (1966) had not been decided when this trial occurred. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) contained the standards for impeachment by prior statements illegally obtained.

The record reflects the impeachment was directed to a collateral issue and not to the controlling admission of guilt. The statement did not contain an admission of guilt but was in nature exculpatory. Only collateral matters may be impeached and not those that pertain to the crux of the indictment. United States v. Curry, 358 F.2d 904 (2nd Cir. 1965); Inge v. United States, 123 U.S. App.D.C. 6, 356 F.2d 345 (Cir. 1966). Therefore, we find that it was not error

for the court to allow government counsel to ask the defendant on cross-examination whether or not he had made certain statements to the F.B.I. agent. The statements did not contain an admission of guilt to any of the charges on which Duggar was being tried, 3 Wigmore, Evidence § 821(3) (3rd ed. 1940); therefore, it was proper to permit the use of the statements in rebuttal to test the credibility of the defendant on collateral matters. United States v. Curry, supra; Inge v. United States, supra.

On September 14 and 15, 1965, Endicott, Bartello and Duggar moved for separate trials pursuant to Fed.R. Crim. P. 8(b) and 14. The briefs argue the point under Rule 14; therefore, we address ourselves to the contentions contained therein. The motion and its denial predate the 1966 amendment to Rule 14.

It is contended prejudice resulted from the combined trial because the names of Endicott, Bartello and Duggar were not deleted from statements made by Dillon which were admitted into evidence. Although the court instructed the jury that the statements could only be considered in determining the guilt of Dillon, it is contended the cautionary instruction did not cure the prejudice.

It is interesting to note that each judge except two in this circuit has written on the rule announced in Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954).[3] Each case holds that the trial court's discretion is broad and its action will be upheld in the absence of a clear abuse of discretion. We find no clear abuse of discretion here. The cautionary instruction cured what might otherwise have been resulting prejudice. "We may * * * fairly proceed on the basis that the jury followed these instructions." Delli Paoli v. United States, 352 U.S. 232, 241, 77 S.Ct. 294, 299, 1 L.Ed.2d 278 (1957).

We find merit in the claim of Bartello relating to the admission of questions propounded by the prosecutor to a dying co-conspirator whose testimony was perpetuated pursuant to Fed. R.Crim. P. 15. The portion of the deposition offered after Bartello had rested his defense without taking the stand was:

"Q. Did you know that he [referring to Bartello] had been previously convicted of violation of the gambling laws of the State of Michigan?

A. I knew nothing of his previous life.

Q. And in 1947 he received a sentence of three years for conspiring to violate the gambling laws of Michigan?

A. I repeat. I knew nothing of his previous life."

Government counsel argues the questions were admissible to show the intent of Bartello. On direct examination the deponent had been asked if he knew what Bartello's motivation was in going to Wichita. The reply was that Bartello was a bartender whose bar had to close and he went to Wichita to look for a night club.

It is true that intent is an element of the crime with which Bartello was charged. However, it is difficult, under the circumstances of this case, to see the probative value of the testimony for proving the guilt or innocence of Bartello. At least one of the previous crimes had been committed seventeen years prior to the charges in this case. Bartello had rested his defense without having put his character in issue. The deponent, Harwoods, had testified that he met Bartello on a certain date which post-dated the time of the alleged convictions. Harwoods further testified that he knew nothing of Bartello's past life. In addition, the evidence of the prior convictions

3. Kolod v. United States, 371 F.2d 983, 990 (10th Cir. 1967); Glass v. United States, 351 F.2d 678, 680 (10th Cir. 1965); Roth v. United States, 339 F.2d 863, 865 (10th Cir. 1964); Baker v. United States, 329 F.2d 786, 787 (10th Cir. 1964); Dennis v. United States, 302 F.2d 5, 7 (10th Cir. 1962).

came not from Bartello or from Harwoods, but entered the case through the words of the government counsel. The mere asking of the questions here involved, however answered, "may well suggest to the jury that the imputation is true." McCormick, Evidence § 158, at 336 (1954). The only purpose of the questions which appears to us was to show Bartello had prior convictions. Whatever the relevancy of the evidence, it does not outweigh the right of Bartello to be protected against unfair prejudice.

The record is not clear as to whether or not the specific questions were objected to when offered in the presence of the jury; nevertheless, we conclude it was plain error to have admitted the evidence. The effect of the questions was to acquaint the jury with Bartello's past record. This was prejudicial to him.

> "We are, of course, loathe to reverse a case like this in the face of overwhelming evidence of guilt. Technical niceties such as these make the law appear ridiculous to the man on the street. But, 'All law is technical if viewed only from concern for punishing crime without heeding the mode by which it is accomplished.' [Citation omitted]. In circumstances like these the question is not whether the appellants have been proven guilty, but whether guilt has been established according to the procedural safeguards to insure trial before a fair and unprejudiced jury. It is not enough to be able to say that the evidence is entirely sufficient to convict without reference to prior records of appellants and that the jury would have in all probability returned a verdict of guilty without such knowledge. The question we must decide is whether the jury was more prone to convict these appellants knowing they had previous records than without such knowledge. In other words, can we say with reasonable certainty that the reference to prior records 'had but very slight effect on the verdict of the jury'? We cannot so say, and the cases must,

therefore, be reversed." Sumrall v. United States, 360 F.2d 311, 314 (10th Cir. 1966).

We cannot say with certainty that the reference to the prior convictions had but slight effect on the jury. Therefore, we reverse the conviction of Bartello.

Affirmed as to Dillon, Endicott and Duggar.

Reversed and remanded for a new trial as to Bartello.