**UNITED STATES of America, Plaintiff,**

v.

**Frank M. KISH, et al., Defendants.**

**Crim. No. 69 S Cr. 23.**

United States District Court
N. D. Indiana,
South Bend Division.

Sept. 18, 1969.

Alfred W. Moellering, U. S. Atty., Richard L. Kieser, Asst. U. S. Atty., Robert A. Hickey, Atty., Dept. of Justice, for plaintiff.

Milton A. Johnson, of Jones, Obenchain, Johnson, Ford & Pankow, South Bend, Ind., for defendants.

## MEMORANDUM

GRANT, Chief Judge.

Defendants herein are charged by indictment with conspiracy (18 U.S.C. § 371) and in three substantive counts with a violation of 18 U.S.C. § 1952 (interstate transportation in aid of racketeering).

Specifically, it is charged that the Defendants used and caused to be used the facilities of the South Shore Railroad train, operated between Chicago, Illinois, and South Bend, Indiana, to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of a gambling establishment in South Bend, Indiana, in violation of Indiana's anti-gambling statutes. Burns, Ind.Stat.Ann. §§ 10-2304, 2307, 2311 and 2331. It is stipulated that the use of the interstate facility referred to in the indictment is the transmission, from Chicago to South Bend, of the periodic issues of the "Illinois Sport News," a "scratch sheet" said to be used by the Defendants in connection with horse race bookmaking in their South Bend establishment, the Lincoln Hotel.

The Defendants, by their Motions to Suppress and to Dismiss, point out that the "Illinois Sport News" is a "newspaper or similar publication" which is specifically exempt from the provisions of 18 U.S.C. § 1953 (defining wagering paraphernalia and proscribing its interstate transportation) and for this reason, they contend, it may not be used as the basis for an indictment charging a violation of 18 U.S.C. § 1952, which was enacted contemporaneously with § 1953 and which seeks to proscribe "interstate and foreign travel or transportation in aid of racketeering enterprises." Defendants cite United States v. Arnold, 380 F.2d 366 (4th Cir. 1967) which so holds. We decline to follow Arnold for the reasons hereinafter stated.

■ It is recognized at the outset that "Illinois Sport News" is not "wagering paraphernalia" within the ban of 18 U.S. C. § 1953. (We point out, parenthetically, that the present indictment alleges no violation of § 1953.) A reading of the Congressional debates at the time of enactment points up the fact that the legislators were determined to exclude all "newspapers and other periodicals" from its ban in order to avoid any future First Amendment challenge to validity.

That, however, in our opinion, had nothing to do with the legislators' larger, and expressed, efforts to combat organized crime and racketeering by prohibiting travel in interstate commerce, or the use of the facilities of interstate commerce, in aid of interstate racketeering enterprises. See United States v. Smith, 209 F.Supp. 907, 916 (E.D.Ill.1962); 2 U.S.Code Cong. and Admin.News, p. 2665 (1961).

■ 18 U.S.C. § 1952, under which the challenged sections of this indictment are drawn, says "Whoever * * * uses any facility in interstate * * * comferce, * * * with intent to * * * promote * * * any unlawful activity, (including gambling in violation of the law in the state in which committed) * * * shall be fined not more than $10,000 or imprisoned for not more than five years, or both." By this statute, Congress prohibited the use of facilities in interstate commerce to promote, etc., certain specified activities. It did not limit its application to the actual physical transportation of wagering paraphernalia, although that, too, might properly form the basis for charging a violation of 18 U.S.C. § 1952. The clearly expressed intent of Congress was to deny the use, in any way or in any form, of the facilities of interstate commerce to persons engaged in racketeering enterprises in order to promote a program of local law enforcement within the states.

In Kelly v. Illinois Bell Tel. Co., 325 F.2d 148 (7th Cir. 1963) plaintiffs brought their action for injunction against Illinois Bell and Western Union. They alleged that the publication and dis-

**1214**

tribution of their publication, the "Illinois Sport News," (the same publication involved in the instant case), did not violate any law and asked the district court to enjoin the defendants from their threatened discontinuance of services to plaintiffs. It was stipulated by the parties, and the district court found, that none of the plaintiffs or their employees engaged in the receipt of bets or wagers. Nor was there any evidence before the district court that those to whom plaintiffs distributed the "Illinois Sport News" were so engaged. See Kelly v. Illinois Bell Tel. Co., 210 F.Supp. 456 (E. D.Ill.1962). On that record, the Seventh Circuit Court of Appeals, in affirming the injunction ordered by the district court, found that there had been no violation of section 1952 "in the circumstances of this case." The Court then added, in very significant language:

> As plaintiffs point out, however, discontinuance of their facilities is not prohibited to defendants if additional prima facie evidence should be adduced in the future reflecting use of defendants' facilities, in some manner other than that set forth in the Stipulation, the Findings of Fact and the Opinion, which does show a violation of Federal, State or local law. *Id.* at 152–153 of 325 F.2d.

We believe that the separate offense proscribed in section 1952 was properly interpreted in United States v. Ross, 374 F.2d 227 (6th Cir. 1967), and United States v. Azar, 243 F.Supp. 345 (E.D. Mich.1964), and that this interpretation was recognized by the Seventh Circuit in Kelly v. Illinois Bell, supra.

Additionally, we are strengthened in this conclusion by the following quotation found in United States v. Miller, 379 F.2d 483 (7th Cir. 1967):

> Here the government need only show that there was the use of an interstate facility to satisfy the jurisdictional element of this offense; the commission of the balance of the offense, here gambling forbidden by State Law, was conceded in both cases before us.

\*    \*    \*    \*    \*    \*

As to State Law, the defendants all knew they were violating Indiana gambling laws. Section 1952 requires no more.

\*    \*    \*    \*    \*    \*

The legislative history of the statute shows, *inter alia,* that it was meant to condemn the use of an interstate facility *and* local gambling activities facilitated by the use of an interstate facility. \* \* \* Congress fully intended this statute to apply to local gambling, for it "decided that the facilities of interstate commerce become tainted when they are used by persons with evil motives and who perform evil acts. \* \* \* Federal assistance was being proffered by Congress where local law enforcement had failed." *Id.* at 487, 488.

The Defendants' Motion to Suppress and to Dismiss must, therefore, be denied.