Argued December 5, 1966, reversed and remanded January 18,
1967, United States Supreme Court denied certiorari
June 12, 1967

## STATE OF OREGON, *Respondent, v.* FRANK LEROY BREWTON, *Appellant.*

422 P. 2d 581

*William J. Sundstrom,* Portland, argued the cause and filed a brief for appellant, and appellant filed briefs in propria persona.

*Jacob B. Tanzer,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Hardy Myers, Jr., Portland, filed a brief as amicus curiae on behalf of the American Civil Liberties Union of Oregon.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

GOODWIN, J.

This is an appeal from a conviction of first-degree murder. Background facts beyond those essential for this appeal are substantially outlined in *State v. Brewton,* 220 Or 266, 344 P2d 744 (1959), and in 238 Or 590, 395 P2d 874 (1964).

The only issue here is whether it was error to permit the state to impeach the defendant with statements that were elicited from him by police interrogation which, the state concedes, rendered the statements inadmissible as a part of its case in chief. The interrogation, which took place in November 1957, was not preceded by the warnings and advice concerning Fifth and Sixth Amendment protection that are now required by *State v. Neely,* 239 Or 487, 503-504, 395 P2d 557, 398 P2d 482, 486-487 (1965), and by subsequent decisions of this court.

After the state had rested without offering Brewton's admissions in evidence, Brewton took the stand in his own defense. He told a story which, if believed, might have been consistent with his theory that he was not a principal in the crime. Brewton's courtroom story, however, was wholly inconsistent with the statements he had given the police shortly after his arrest.

After hearing the defendant's testimony, the state offered his police-station admissions for the limited purposes of impeachment, and they were so received over a timely objection. (The trial court earlier had held a hearing upon the issue of voluntariness, and

had found as a fact that the admissions which Brewton made to the police were voluntary, at least in the sense that they were not coerced in any manner. The statements fell under the exclusionary rule only because they did not meet the constitutional requirements of *State v. Neely.*)

A number of state and federal decisions tend to support the trial court in receiving such evidence for impeachment. *Tate v. United States,* 283 F2d 377 (DC Cir 1960), deals with the conflict between the *McNabb-Mallory* exclusionary rule and a desire for truth provable by trustworthy evidence. The case holds that when one set of these interests must yield it is better that the exclusionary rule yield than to stand upon that rule and invite perjury. See also *State v. McClung,* 66 Wash2d 654, 404 P2d 460 (1965), cert. denied, 384 US 1013, 86 S Ct 1967, 16 L Ed 2d 1031 (1966). It might be noted that the federal procedural rationale for the *McNabb-Mallory* rule has recently been replaced by constitutional rules now binding on the states. *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964).

This court has not been faced with the identical question decided in *Tate v. United States,* but *State v. Smith,* 242 Or 223, 408 P2d 942 (1965), is instructive. In *State v. Smith,* we held that a confession not shown to be voluntary was just as untrustworthy when used to prove the defendant a liar as when used to prove that he committed the crime for which he was on trial. It has been pointed out in the case at bar that Brewton's admissions to the police were voluntary, at least in the pre-*Escobedo* sense that they were not obtained by threats or promises.

While an argument can be made that "voluntary" unconstitutional confessions can be distinguished from

"involuntary" unconstitutional confessions, solely for the purposes of impeachment, this dichotomy does not appeal to us as constitutionally meaningful.

Since the decision in *State v. Neely,* supra, this court has consistently applied the exclusionary rule when the facts established interrogation which was held to violate the constitutional rights of the defendant as interpreted in *State v. Neely.* See, e.g., *State v. Ervin,* 241 Or 475, 406 P2d 901 (1965); *State v. Keller,* 240 Or 442, 402 P2d 521 (1965). In these cases we have recognized the inherently coercive character of police interrogation of a suspect in custody who has not been advised of his rights. Even in cases in which we have affirmed convictions following custodial interrogation, we have done so only upon express findings supported by credible evidence that there was an intelligent waiver of rights. See, e.g., *State v. Atherton,* 242 Or 621, 410 P2d 208, cert. denied 384 US 1025, 86 S Ct 1982, 16 L Ed 2d 1030 (1966).

Whether or not *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 714 (1966) is binding upon Oregon courts with reference to trials concluded before the *Miranda* decision was published, we are satisfied that any attempt in the future to restrict the exclusionary rule to the state's case in chief would be inconsistent with the constitutional principles which are inherent in the *Miranda* case as well as in our own earlier decision in *Neely.*

The United States Supreme Court under the Fourteenth Amendment has attempted to achieve uniformity between the state and federal systems in the interpretation of Fourth, Fifth, and Sixth Amendment rights. It has done so upon the assumption that the exclusionary rule is a necessary procedural device to implement the substantive rights written into the

Fourth, Fifth, and Sixth Amendments. This court, accordingly, has adopted the assumption that without the procedural aid of the exclusionary rule those substantive rights would be empty promises instead of constitutional guarantees. We so held in *State v. Neely,* and we have followed that view in cases coming before us since *Neely.*

If we should today adopt a restrictive application of the exclusionary rule, the result could be a major step backward. This court would in effect be saying to the overzealous that police officers will be free in the future to interrogate suspects secretly, at arms length, without counsel, and without advice, so long as they use means consistent with threat-or-promise voluntariness, and so long as they understand that they may file the information only for use to keep the defendant honest. Thus the police could, at their option, take a calculated risk: By giving up the possibility of using the suspect's statements in the state's case, they could obtain by unconstitutional means and store away evidence to use if the defendant should elect upon trial to take the stand. As commendable as it may be to prevent perjury, the price of such prevention could be to keep defendants off the stand entirely. In some cases, the temptation to silence a suspect of dubious probity might very well outweigh the desire to conduct a constitutionally valid interrogation. We have concluded that to introduce such a rule could undo much of the recent progress that has been made in upgrading police methods to preserve the rights guaranteed under the Fifth and Sixth Amendments, and would be inconsistent with the trend of our recent decisions.

We are also unable to follow the "middle ground" suggested in *Tate v. United States,* supra, to the effect that if a defendant merely takes the stand and denies

his part in the crime he may not be impeached by the fruits of unconstitutional interrogation, but if he testifies about collateral matters he may be so impeached. Such a rule would be virtually unworkable. The usual reason a defendant chooses to take the stand is to give the jury a comprehensive statement of his side of the story. Any story that would be responsive to the questions raised by the state's case would tend to open up collateral matters and would invite impeachment if the tools of impeachment were at hand. The state should be free to impeach, but it ought to come by its impeachment as legally as it accumulates its other evidence.

If the choice is to exclude all illegally obtained evidence or to silence the defendant as a witness, it is better to exclude the illegal evidence. As we have said before, circumvention of constitutional liberties is not to be encouraged by permitting illegally obtained evidence to come in "through the back door." *State of Oregon v. Goodwin,* 207 Or 642, 645, 298 P2d 1024 (1956).

Other assignments of error have been briefed and argued, but since they present questions that are not likely to arise upon another trial they need not be discussed at this time.

The case is reversed and remanded to the trial court for a new trial.

PERRY, J., dissenting.

I am of the opinion that neither *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L ed 2d 694, nor any of the opinions of this court, compel the reasoning or result approved by the majority in this case.

*Miranda v. Arizona,* supra, and *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482, deal with the use of confessions for the purpose of providing probative

facts required to establish the necessary elements of the crime with which a defendant is charged. These cases are thus grounded upon the proposition set forth in the Fifth Amendment of the Constitution of the United States—that no man shall be compelled to give incriminating evidence against himself.

Incriminating evidence is evidence which tends to show that the defendant did certain acts from which a trier of fact could conclude that the defendant committed the crime charged. The purpose of the prophylactic rule of exclusion then is to prevent the introduction of statements made by a defendant which tend to establish his guilty acts as matters of fact.

The introduction of statements made by a defendant by way of impeachment to test the credibility of his story of his innocence serves no such purpose.

A defendant's statements and his confession thus used have no probative value to prove the crime charged, and the trial court will so instruct the jury.

The trial judge, after an extensive hearing, held that the confession of this defendant was voluntary, but that it could not be used as probative evidence because it violated the absolutism rules of procedure laid down by a majority of the Supreme Court of the United States to curb what they believed were unwarranted police practices.

*State v. Smith,* 242 Or 223, 408 P2d 942, permits the introduction of statements for impeachment purposes if found voluntary.

In *Walder v. United States,* 347 US 62, 65, 74 S Ct 354, 98 L ed 503 (1954), in dealing with an exclusionary rule that prevented the introduction of evidence as proof of the crime charged, the Supreme Court stated:

"It is one thing to say that the Government can-

not make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. * * *"

I know of no reason why this court should go beyond the requirements of the Supreme Court of the United States in announcing a rule that would enlarge the exclusionary rules of the Supreme Court to a point not compatible with the purposes sought to be served by the Fifth Amendment.

Based upon the rationale of *Walder v. US,* supra, followed in *Tate v. US,* 283 F2d 377 (DC Cir 1960), and *State v. McClung,* 66 Wash2d 654, 404 P2d 460 (1965), I would affirm the judgment.

HOLMAN, J., dissenting.

The issue is whether the prophylactic purposes of *Escobedo*[1] and *Neely*[2] will be negated if admissions and confessions obtained by non-compliance with those cases are permitted to be used for impeachment of defendants. I am of the opinion that the inability of the prosecution to use such admissions and confessions in its case in chief for incriminating purposes will be sufficient to obtain compliance with *Escobedo* and *Neely* requirements by the police. If this is so there is no valid reason for not permitting the use for impeachment purposes of evidence that everyone concedes is both relevant and truthful.

O'CONNELL, J., joins in this dissent.

---

[1] Escobedo v. State of Illinois, 378 US 478, 84 S Ct 1758, 12 L ed2d 977 (1964).

[2] State v. Neely, 239 Or 487, 395 P2d 557, 398 P2d 482 (1965).