UNITED STATES of America ex rel. James Edward HILL, Appellant,

v.

Warren PINTO, Superintendent New Jersey State Prison Farm, Rahway, New Jersey.

No. 16722.

United States Court of Appeals Third Circuit.

Submitted on Briefs Nov. 20, 1967.

Decided April 23, 1968.

James Edward Hill, pro se.

John J. Barry, First Asst. Prosecutor, Vincent Panaro, County Prosecutor, Mercer County, Trenton, N. J., for appellee.

Before HASTIE, FREEDMAN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Appellant was convicted in a New Jersey state court of murder in the second degree and was sentenced to fifteen to twenty years imprisonment. The Supreme Court of New Jersey affirmed his conviction.[1] His subsequent pro se petition in the district court for a writ of habeas corpus was denied [2] and from that action he brings this appeal.

### I.

Early in the trial the prosecutor stated in open court in the absence of the jury that petitioner had threatened to kill the State's principal witness, Arthur Lee Hames, if he testified against him and sought to present Hames' testimony of the threat. An objection having been interposed the trial judge left open the question whether the testimony was admissible. Next day the court discussion of the threat was reported in the local newspaper. When petitioner's counsel called this to the attention of the trial judge it was apparently agreed that an instruction to the jury, which had not been sequestered, to ignore the newspaper report would be appropriate. As it turned out, however, no specific request for such an instruction was made and the trial judge said nothing on the subject to the jury.

Three days after the newspaper report appeared the trial judge permitted Hames to testify to petitioner's threat

1. State v. Hill, 47 N.J. 490, 221 A.2d 725 (1966).

2. The opinion of the district court is unreported.

against him and refused the request of petitioner's counsel that petitioner be permitted to testify for the limited purpose of denying that he made the threat. The trial judge ruled that testimony by petitioner in this area would subject him to complete cross-examination on the substantive evidence of his guilt and also to impeachment of his credibility.

Petitioner argues that (1) he was denied due process of law because of the admission of Hames' testimony regarding the threat; (2) he was denied due process of law because of the harmful effect of the newspaper report; and (3) Hames' testimony violated his privilege against selfincrimination because it forced him to take the stand.

(1) Hames' testimony regarding the threat made by petitioner was given in these words: "He said if I go up to testify against him, he said, 'I already killed one and would kill another.' He wouldn't get any more time for killing another."

This testimony was plainly admissible because it was relevant to show consciousness of guilt. 2 Wigmore, Evidence, §§ 277–278 (3d ed. 1940). The threat was also relevant because the form it took justified an inference that petitioner acknowledged that he had killed the victim for whose murder he was on trial.

(2) It follows from the admissibility of the testimony of the threat that there is no basis for the claim that due process was violated because of the failure to caution the jury to disregard the newspaper report. Hames' direct testimony of the threat obliterated whatever harm the newspaper report alone might have done.

(3) Petitioner's claim that his privilege against self-incrimination was violated because he was forced to take the witness stand in his own behalf in order to deny making the threat against Hames falls with the conclusion that Hames' testimony was admissible. The privilege is not violated because a defendant feels the need to repel with his own testimony incriminatory evidence which was properly received against him.

II.

The State sought to prove in its case in chief that petitioner had killed his former mistress, Anita Folk, by showing that he had struck her on the head with a chair when he found her in bed with another man. Hames testified to this effect, and a police officer testified that petitioner orally admitted that he had done so when the police pressed him to acknowledge it.

Petitioner, taking the stand, denied making any threat against Hames and testified to his version of the occurrence at Miss Folk's apartment. He admitted that he had gone there on the evening the State charged she was killed, but claimed that when he discovered another man there he merely slapped her face with his open hand. He denied that he had told the police that he struck Miss Folk with a chair, although he said they had persisted in attempting to force such an admission from him. He said that after persistent questioning, threats and promises by the police he gave them two statements,[3] and without disclosing their contents said the first one was false.

On cross-examination the prosecutor read to petitioner the questions and answers contained in the two statements and interrogated him regarding them. It was disclosed that in the first statement petitioner had denied that he was present at Miss Folk's apartment and in the second statement had admitted being there but claimed he had merely struck her with his hand. Later in rebuttal the State offered the statements in evidence. No objection was made by petitioner's counsel to any of this cross-examination or to the admission of the statements in evidence.

---

3. It is clear from his testimony on direct and cross-examination that he was referring to two written statements.

Petitioner contends that the two written statements which the police obtained from him were involuntary and were taken in violation of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), decided prior to his trial, because he had not been advised of his right to counsel. He asserts that they should not have been used against him without a hearing to determine if they were voluntary, as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Without determining the merits of this contention the district judge, on the basis of the state court record and without holding an evidentiary hearing, decided that petitioner's court-appointed counsel had made the deliberate choice as a matter of trial strategy to make no objection to the use of the statements against him and thereby under Henry v. State of Mississippi, 379 U.S. 443, 451–452, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), had bound petitioner to a waiver of any right to relief on federal habeas corpus. The district judge found that this bypassing of objection at the trial occurred because the statements did not differ substantially from petitioner's testimony on direct examination and that petitioner therefore had more to gain than to lose in having the statements admitted.

■ We do not believe that the state court record, which contains no hearing on waiver, is alone sufficient to justify a finding that there was a deliberate bypassing of the right to object to the use of the statements. It is true that the view is possible that petitioner's original mention of the statements and the failure of his counsel to object to the cross-examination regarding their contents and to their admission in evidence on rebuttal formed part of a design to secure the benefit of what was favorable in them and to lay the foundation for his counsel's later argument to the jury that the state's testimony of an oral admission that he had struck Miss Folk with a chair should not be credited because if it had been made it too would have been reduced to writing. But this is not the only conclusion which may be drawn from the state court record. While the district judge considered the statements more helpful than harmful to petitioner the record shows that the State's use of the statements was sufficiently harmful to him to justify an inference that his counsel failed to object because he did not know that they might have been excluded.

■ The first statement, which petitioner acknowledged was false, undoubtedly affected him detrimentally. It went into an elaborate lie that he had last seen Miss Folk on the street on the afternoon preceding the night she died and that she then bore signs of having been beaten, presumably by someone else. It went on to relate a fabricated account of petitioner's activities that evening. The making of such an admittedly false statement was in itself evidence of guilt. 2 Wigmore, Evidence, § 278 (3d ed. 1940). It also discredited petitioner before the jury as a dishonest witness. The trial record shows how much the prosecutor made of the falsity of this statement. He repeatedly read from it, emphasizing item by item the dishonesty of the denials it contained, forcing petitioner to acknowledge again and again that his answers in the statement were false, even though he gave them under oath. The effect which the use of this statement had on petitioner's case went far beyond the harm done by his acknowledgement on the stand that out of fear of the police he had given them a statement which was false. Moreover, petitioner's reference to the first false statement on direct examination when he might have remained silent on the subject may well indicate that his counsel had intended to minimize by anticipation the harm he thought inevitable because the statements ultimately would be admitted against him.

The second statement, although it was consistent with petitioner's claim that he did not strike Miss Folk with a chair, contradicted his testimony in a number of instances, and the prosecutor heavily emphasized these contradictions. Peti-

tioner testified that he did not know if Miss Folk had fallen when he struck her, but in the statement he had admitted that she fell. On the stand he admitted that he had cut up the clothes of Miss Folk's visitor, but in the statement he denied having done so. His testimony was that after he struck her. she went to the bathroom and he then merely helped her as she walked from there back to her bed, whereas in the statement he said that he had carried her from the bathroom to the bedroom. The statement also contained words of remorse: "I am sorry this happened; that's all I can say, I didn't mean to do it". The prosecutor urged this on the jury as an admission of guilt.

It is clear therefore that the second statement cast doubt on the veracity of petitioner's testimony that he had simply struck the victim with his open hand in a gesture which had caused her no real injury.

The contemporaneous conduct of petitioner's counsel at the trial supports the view that he was not engaged in a trial tactic in allowing petitioner to be cross-examined regarding the written statements and in failing to object to their admission in evidence in the State's rebuttal. His request that the trial judge permit petitioner to take the stand solely for the purpose of denying the threat against Hames [4] indicates that his desire was to exclude the prior statements rather than to use them.

We therefore conclude that whether there was a deliberate bypassing of the right to object to the admission of the statements and to their use on cross-examination is a matter of intention which requires an evidentiary hearing.[5] Such a hearing will afford the district judge the opportunity to determine whether counsel deliberately bypassed the right to object and the extent to which it is personally binding on petitioner.[6]

### III.

The State urges that there is no reason for an evidentiary hearing because (1) even if there was no waiver of objection to the statements, they were admissible to impeach petitioner's credibility; and (2) alternatively, their use was necessary to protect the State against an inference from petitioner's reference to them in his direct testimony that it was hiding something if it did not produce them.

These claims are made although the State's cross-examination was not limited to impeachment and the statements went to the jury as substantive evidence. We shall assume, without deciding,[7] that the burden was on petitioner to request a limiting instruction and that his failure to do so would prevent objection to the use of the evidence for substantive purposes if it was admissible for impeachment.

(1) The question of the admissibility of petitioner's statements to impeach his credibility leads to a consideration of the frequently discussed doctrine of Walder v. United States, 347 U.S. 62, 74 S.Ct.

---

4. Petitioner's counsel said: "If your Honor please, I think that this particular issue on the threat can pretty near be dispositive of the case it's so prejudicial, and I would ask a ruling, your Honor, that in view of your ruling to admit this evidence that the defendant be permitted to take the stand for the limited purpose of this very issue, and that cross examination be limited to merely the very issue itself and none of the normal cross examination, on the case in general, and specifically excluding cross examination on previous convictions and prior statements or anything else with regard to the case in main."

5. See Henry v. State of Mississippi, supra 379 U.S. at 452, 85 S.Ct. 564; United States ex rel. Gockley v. Myers, 378 F. 2d 398, 401 (3 Cir. 1967).

6. Compare Henry v. State of Mississippi, supra 379 U.S. at 451–452, 85 S.Ct. 564 with Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

7. Compare United States v. Curry, 358 F. 2d 904, 912 (2 Cir.), cert. denied, 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966).

354, 98 L.Ed. 503 (1954). There a defendant on trial for illegal possession of narcotics volunteered the sweeping claim on the stand that he had never in his life possessed narcotics. The Court permitted his credibility to be impeached by rebuttal testimony that on a prior unrelated occasion narcotics had been found in his possession, although this evidence was obtained as a result of an illegal search and seizure.[8] In language which has since received discordant construction, Mr. Justice Frankfurter said:

> "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn [this] * * * to his own advantage, and provide himself with a shield against contradiction of his untruths. * * *

> "Of his own accord, the defendant went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics. Of course, the Constitution guarantees a defendant the fullest opportunity to meet the accusation against him. He must be free to deny all elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurous testimony in reliance on the Government's disability to challenge his credibility." [9]

A number of decisions seem to read *Walder* to authorize impeachment of a defendant's testimony concerning matters relating to the crime by statements taken during a period of unnecessary detention in violation of Rule 5(a) of the Federal Rules of Criminal Procedure [10] or unconstitutionally obtained in the absence of counsel,[11] to the extent that the statements show an inconsistency with his testimony and do not inculpate him beyond what he has already testified to on his direct examination. Such impeachment is said to be on matters which are "minor" or "collateral" to guilt, and does not amount to an impeachment by illegal evidence of the defendant's denial of the elements of guilt. The impeachment is characterized in this way because the statements do not on their face tend to show defendant's guilt beyond the incrimination already present in his own testimony. Most courts agree that an impeaching statement which is on its face more incriminating than defendant's testimony may not be used to impeach simply because it contradicts the defendant's testimony on the stand.[12] On such a test petitioner's first statement would be available for impeachment because it was on its face exculpatory. It is arguable that the second statement also would be admissible under this test with the possible exception of the statement of

8. Accord United States v. Grosso, 358 F.2d 154, 162 (3 Cir. 1966), reversed on other grounds, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

9. Walder v. United States, supra 347 U.S. at 65, 74 S.Ct. at 356.

10. See Tate v. United States, 109 U.S. App.D.C. 13, 283 F.2d 377 (1960); Bailey v. United States, 117 U.S.App.D.C. 241, 328 F.2d 542, cert. denied, 377 U.S. 972, 84 S.Ct. 1655, 12 L.Ed.2d 741 (1964); Inge v. United States, 123 U.S.App.D.C. 6, 356 F.2d 345 (1966); see also Harrison v. United States, 387 F.2d 203, 212–214 (D.C.Cir.), cert. granted, 389 U.S. 969, 88 S.Ct. 495, 19 L.Ed.2d 460 (1967), involving the admission of testimony of a defendant given at a prior trial at which he was denied his Sixth Amendment right to counsel.

11. See United States v. Curry, 358 F.2d 904, 912 (2 Cir.), cert. denied, 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966), noting that impeachment by involuntary statements might be treated with greater caution.

12. See Inge v. United States, supra, n. 10; State v. Brewton, Or., 422 P.2d 581, cert. denied, 387 U.S. 943, 87 S.Ct. 2074, 18 L.Ed.2d 1328 (1967); Annot. 89 A.L.R.2d 478 (1963) and its supplements.

remorse. The test, however, is too artificial to be acceptable.

In the first place, there is an unreality in the notion that the prosecution's use of prior inconsistent statements given by a defendant to the police can be exculpatory rather than incriminating. The undermining of a defendant's credibility is more devastating to him than the contradiction of a substantive element of his defense. The fact is that if the prosecution uses it, the evidence must be deemed incriminatory. The view that a distinction may be drawn between inculpatory and exculpatory statements was rejected in Miranda v. State of Arizona, 384 U.S. 436, 476–477, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966):

> "[N]o distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word  \*  \*  \*." [13]

Indeed, Miranda has been read to justify the view that Walder's limited exception permitting the use for purposes of impeachment of illegally obtained evidence has no application to statements obtained from a defendant in violation of his constitutional rights.[14] Such a view was expressed even prior to Miranda on the ground that the policies which underlie the exclusion of statements unconstitutionally obtained differ from those which support the exclusion of evidence secured by an illegal search and seizure.[15]

■ We need not, however, decide the merits of these views. For a defendant who seeks to deny his guilt must necessarily give his version of the events surrounding the crime. Petitioner here did no more than this, beyond his mention of the statements he gave to the police. To permit impeachment of such testimony by unconstitutionally obtained statements violates the overriding principle of Walder itself that a defendant must be free to deny all of the elements of the crime charged against him, a principle which should not be submerged under the exception that one cannot use it as a sanctuary for a sweeping claim of purity because he knows that the government's possession of concrete proof to the contrary had been obtained by an unlawful search and seizure.

We therefore adopt the view that coerced statements obtained from a defendant or statements taken in violation of Escobedo may not be used to impeach his credibility merely because the items of the statement which are used do not on the surface add any fresh inculpation to what the defendant has already said on the stand.[16]

13. The Supreme Court had previously applied constitutional rules of exclusion to statements used as substantive evidence without making any distinction between statements intended to be confessions or partially inculpatory or exculpatory. See Ashcraft v. State of Tennessee, 327 U.S. 274, 66 S.Ct. 544, 90 L.Ed. 667 (1946); Wong Sun v. United States, 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Owen v. Arizona, 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041 (1964), reversing, 94 Ariz. 404, 385 P.2d 700 (1963); Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

14. See Commonwealth v. Padgett, 428 Pa. 229, 237 A.2d 209 (1968); Commonwealth v. Burkett, 211 Pa.Super. 299, 304, 235 A.2d 161, 163 (1968), Hoffman, J., dissenting; see also State v. Brewton, supra, n. 12; Comment, The Collateral Use Doctrine: From Walder To Miranda, 62 Northwestern L.Rev. 912 (1968). But see United States v. Armetta, 378 F.2d 658, 662 (2 Cir. 1967).

15. Developments in the Law—Confessions, 79 Harv.L.Rev. 935, 1029–1030 (1966).

16. See People v. Underwood, 61 Cal.2d 113, 37 Cal.Rptr. 313, 389 P.2d 937 (1964); People v. Barry, 237 Cal.App.2d 154, 46

■ (2) The State's alternative argument, based on a more modest view of *Walder,* is that since petitioner opened the door by mentioning that he had given statements to the police, the State had a right to use them in order to avoid an inference by the jury that it had something to hide. Unlike *Walder,* however, petitioner did not by a sweeping claim of complete freedom from contact with criminality attempt to take advantage of a rule of exclusion. All that petitioner said on the stand regarding the statements was a simple acknowledgement that he had given them to the police and that one of them was false. Since petitioner characterized the first statement as false, the jury could not have inferred that it contained matters favorable to him because of the State's failure to produce it.

■ Petitioner's mention of the second statement stands on a somewhat different basis. Since he did not characterize it as false, its mention might have raised in the minds of the jury an inference, if the State had not produced it, that it may have been adverse to the State's contentions. Such an inference, however, could readily have been neutralized by a direction to the jury that the State's failure to produce the statement should not be deemed an indication either that the State was concealing evidence or that it contained anything harmful to the State's case. Instead the State reached far beyond neutralization of the slight disadvantage of the inference and achieved the admission of substantive evidence of petitioner's guilt as well as impeachment of his credibility. In *Walder,* on the other hand, the alternative of a cautionary instruction was not available because only the disclosure of defendant's possession of the seized narcotics could neutralize his assertion that he had never possessed narcotics. There was therefore no way in which the jury could have been cautioned without also bringing to their attention something which the defendant himself had not made known.

It follows that the judgment of the district court must be vacated and the cause remanded. On remand the district court will consider petitioner's constitutional claims regarding the written statements unless an evidentiary hearing establishes that his right to raise these claims has been waived. The district court will, of course, also be free to consider any other grounds presented to it upon which we have not passed which make a hearing on waiver unnecessary.

## IV.

Petitioner also claims that the district court infringed on his privilege against self-incrimination by not permitting him to take the stand for the limited purpose of refuting Hames' testimony that he had threatened his life. This claim and a number of others which are presented here for the first time [17] do not appear in the petition for habeas corpus or the petition for rehearing in the district court and the court made no mention of them. Another objection, which does appear in the petition for rehearing but is not mentioned by the district court nor specifically referred to in the petition for habeas corpus, is that the testimony that he had orally admitted hitting Anita Folk with a chair was improperly admitted because it was illegally obtained and no hearing was held on its voluntariness.

These claims raise at once the question whether they were adequately presented for the consideration of the district court, and if so whether petitioner has exhausted his available state remedies regarding them. The district court therefore will consider these contentions in the light of these circumstances.

---

Cal.Rptr. 727 (1965), cert. denied, 386 U.S. 1024, 87 S.Ct. 1382, 18 L.Ed.2d 464 (1967).

17. Petitioner also claims that he was denied due process because the charge allowed the jury to find guilt solely on the basis of the evidence of the threat. He claims a denial of equal protection because the prosecutor made improper inflammatory remarks about this testimony.

478

The judgment of the district court will be vacated and the cause remanded for further proceedings in accordance with this opinion.