**Joseph Carrole ROLLAND, Petitioner,**

v.

**PEOPLE OF the STATE OF MICHIGAN, and Perry M. Johnson, Respondent.**

**Civ. A. No. 34997.**

United States District Court, E. D. Michigan, S. D.

Dec. 14, 1970.

Legal Aid & Defender Assn. of Detroit, Arthur J. Tarnow and M. Gerald Schwartzbach, Detroit, Mich., for plaintiff.

Peter Houk, Asst. Atty. Gen., for defendant.

## OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

KEITH, District Judge.

Petitioner, Joseph Carrolle Rolland, is presently incarcerated in the State Prison of Southern Michigan pursuant to a September 26, 1966 Detroit Recorder's Court conviction sentence of life for the crime of murder in the first degree. The instant petition for Writ of Habeas Corpus was filed by counsel, and alleges that petitioner is being illegally detained by virtue of a sentence that is constitutionally void in that petitioner was denied his privilege against self-incrimination as guaranteed by the Fifth Amend-

ment to the Constitution of the United States. More particularly, petitioner's allegations state that the trial judge made reversible error when he allowed certain inadmissible statements to be used by the prosecution, over objection, during petitioner's cross examination for the purposes of impeaching his creditability as a witness. The State Attorney General in responding to this petition has submitted a motion to dismiss accompanied by a brief in support of said motion.

The record reveals that petitioner has exhausted his available state remedies.

A review of the trial transcript before the Court shows that petitioner was arrested and charged with murder on October 25, 1965. Four hours later after being advised of his constitutional right to remain silent, and after being told that any statement made could be used against him in court and that he had a right to talk to an attorney before he answered any questions, the petitioner volunteered and signed a formal confession. (IV TR. 17–37). During his trial the judge ruled that because petitioner had not been adequately informed of his constitutional rights to counsel in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), his admissions and confessions were inadmissible. (IV TR. 72–74). Subsequently, the petitioner took the witness stand in his own behalf and the trial judge relying on the authority of Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503, (1954), allowed the prosecution to introduce portions of the excluded confession to impeach the defendant-petitioner's testimony. (V TR. 69–71). The jury was instructed that the statements were being used to test the creditability of the witness and not as substantive proof of the crime. (V TR. 72).

■ In support of his motion to dismiss, the respondent contends that Miranda is not applicable to petitioner's case because his arrest and interrogation occurred almost seven months prior to July 13, 1966, the date of the Miranda decision. It is respondent's position that the cases of Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969), which are concerned with the retroactive application of Miranda, demonstrate an intent on the part of the Supreme Court to make Miranda effective upon those "cases" commenced after June 13, 1966 as opposed to those "trials" began after that date. A re-reading of the Johnson decision convinces this Court that respondent's argument is untenable and that the Supreme Court intended Miranda to have full effect on those cases in which the trial had commenced subsequent to the date of the Miranda decision. See also 10 A. L.R.3d 1054 with relevant pocket parts. In Johnson the Court referred to "trials commenced" in its initial statement concerning the case at page 721 of 384 U.S., at page 1774 of 86 S.Ct.:

"In this case we are called upon to determine whether * * * Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, should be applied retroactively * * *. We hold further that Miranda applies only to cases in which the trial began after the date of our decision one week ago."

The case of Jenkins v. Delaware, supra, is authority for the rule that pre-Miranda confessions could be used at retrials held after Miranda. Therefore, because petitioner's trial commenced after the date of the Miranda decision, the trial judge did not err in applying the Miranda safeguards to petitioner's pretrial confession.

The State next contends as an alternative ground for dismissal that utilization of the inadmissible statements, if error, was harmless error within the meaning of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In urging this position respondent submits that the portions of petitioner's confession which were admitted presented no new evidence to the jury in light of pre-

vious testimony elicited from two of petitioner's accomplices before he took the stand.

In Walder v. United States, *supra*, the case used as authority to impeach petitioner's testimony, a defendant on trial for illegal possession of narcotics volunteered the sweeping claim while on the stand that he had never in his life possessed narcotics. The Court permitted his creditability to be impeached by rebuttal testimony that on a prior unrelated occasion narcotics had been found in his possession, although the evidence was obtained as a result of an illegal search and seizure. Subsequently the so called *"Walder* exception" received widespread although often confusing support, and eventually it was made applicable to a defendant's inadmissible statements. Tate v. United States, 109 U.S. App.D.C. 13, 283 F.2d 377 (1960).

During the pre-Miranda years state and federal courts after adopting the *Walder* exception substantially narrowed its application to the impeachment of testimony which did not bear directly on a defendant's innocence or guilt or pertain to the basic elements of the crime charged in the indictment. In January of 1966, only six months prior to the *Miranda* decision the Court of Appeals for the District of Columbia summarized the post *Walder* law:

"Since then (Walder), we have held that an inadmissible statement can be used only when the defendant makes 'sweeping claims' that go far beyond the crime charged, [White v. United States (1965), 121 U.S.App.D.C. 287, 290, 349 F.2d 965, 968] is impeached on a statement relating to 'lawful property acts' [Tate v. United States (1960), 109 U.S.App.D.C. 13, 16, 283 F.2d 377, 380] 'collateral' to the issue before the jury [Tate v. United States, *supra*, p. 17, 283 F.2d, p. 381], or is questioned about 'minor points.' [Bailey v. United States, 117 U.S.App.D.C. 241, 242, 328 F.2d 542, 543, cert. denied 377 U.S. 972, 84 S.Ct. 1655, 12 L.Ed.2d 741

(1964)]. In such situations, impeachment of the defendant affects only his creditability, since the truth of the impeaching statement does not itself tend to establish guilty. [Johnson v. United States, 120 U.S.App.D.C. 69, 72, 344 F.2d 163, 166 (1964)]." Inge v. United States (1966), 123 U.S.App. D.C. 6, 356 F.2d 345, 349.

■ The question of using inadmissible statements for purposes of impeachment was discussed in *Miranda* and the language of that opinion states clearly and unequivocally that the prosecution is totally restricted from using admissions and confessions obtained in violation of *Miranda's* procedural safeguards. See *Miranda, supra,* 384 U.S. pp. 476–477, 86 S.Ct. pp. 1628–1629. At page 479 of the opinion, 86 S.Ct. at page 1630, the Supreme Court stated:

"But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

In summarizing its position at the outset of the opinion the Court again made reference to the impeachment issue and declared:

"Our holding * * * briefly stated is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda, supra,* p. 444, 86 S.Ct. p. 1612.

Recent case law indicates widespread adoption of the principle that statements secured in violation of *Miranda's* prescripts are totally inadmissible and can never be used to impeach a defendant's creditability. Indeed, several courts in recognizing *Miranda's* interpretation of a defendant's Fifth Amendment rights have either tacitly or explicitly declared

that the *Walder* exception is no longer applicable to statements obtained in violation of a defendant's constitutional rights. See, e. g., State v. Brewton, 247 Or. 241, 422 P.2d 581 (1967), cert. denied, 387 U.S. 943, 87 S.Ct. 2074, 18 L. Ed.2d 1328; Commonwealth v. Robinson, 428 Pa. 458, 239 A.2d 308 (1968); People v. Marsh, 14 Mich.App. 518, 165 N.W.2d 853 (1968), rev. on other ground, 383 Mich. 495, 175 N.W.2d 780 (1970); United States ex rel. Hill v. Pinto, 394 F.2d 470 (3rd Cir. 1968); Agius v. United States, 413 F.2d 915 (5th Cir. 1969); Fowle v. United States, 410 F.2d 48 (9th Cir. 1969); Proctor v. United States, 131 U.S.App.D.C. 241, 404 F.2d 819 (1968); United States v. Fox, 403 F.2d 97 (2nd Cir. 1968); Blair v. United States, 130 U.S.App.D.C. 322, 401 F.2d 387 (1968); Groshart v. United States, 392 F.2d 172, 173 (9th Cir. 1968); Wheeler v. United States, 382 F.2d 998 (10th Cir. 1967); 10 A.L.R.3rd 1054, and relevant pocket parts.

In deciding Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967), the United States Supreme Court established a uniform standard binding upon all courts for determining whether a Constitutional error is of such magnitude as to require a reversal or whether the error was "harmless beyond a reasonable doubt" meaning that the conviction would stand as valid. At the same time, however, the Court recognized that certain prior Supreme Court "* * * cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman, supra,* p. 23, 87 S.Ct. p. 827. In the case at bar we are undoubtedly confronted with an error of constitutional proportions, and the question thereby presented is whether the evidentiary use of the petitioner's formal statement can be tested by the harmless error standard, or whether the constitutional privilege herein violated is regarded as so fundamental as to require the reversal of petitioner's conviction.

Both the majority and the concurring opinions in Chapman v. California, *supra,* recognized that the right to assistance of counsel at trial was of such fundamental and absolute importance that a denial of this constitutional right required automatic reversal. In short, the right to counsel as required by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1961), is one of those "rights so basic to a fair trial that (its) infraction can never be treated as harmless error." Indeed the Court has declared that, even before trial when counsel has not been provided at a critical stage, " 'we do not stop to determine whether prejudice resulted.' Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1956), White v. Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1962)." *Chapman, supra,* p. 43, 87 S.Ct. p. 837. The *White* decision becomes particularly important to the present case in light of the Court's finding that the preliminary hearing accorded to a defendant under Maryland law was a "critical" stage because the "* * * petitioner entered a plea before the magistrate and that plea was taken at a time when he had no counsel." *White,* supra, p. 60, 83 S.Ct. p. 1051. Continuing its discussion the Court stated:

"We repeat what we said in Hamilton v. Alabama, *supra,* [368 U.S.] at 55, 82 S.Ct. 157, that we do not stop to determine whether prejudice resulted: *'Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently.' " White,* supra, p. 60, 83 S.Ct. p. 1051. (emphasis supplied)

■ The thrust of the above decisions and the *compelling reasoning* surrounding *Miranda* and its subsequent interpretations requires this Court to rule that any interrogation statement violative of Miranda which is introduced for impeachment purposes is reversible error. More explicitly this Court adopts the reasoning of the Oregon Supreme

Court in State v. Brewton, *supra*, 422 P.2d at p. 582:

"While an argument can be made that 'voluntary' unconstitutional confessions can be distinguished from 'involuntary' unconstitutional confessions, solely for the purposes of impeachment, this dichotomy does not appeal to us as constitutionally meaningful."

Even assuming, arguendo, however that *Chapman* is applicable to cases involving *Miranda* error, we believe that the introduction of portions of petitioner's formal statement in the present case had such an impact on the jury that the error cannot be characterized as harmless. The prosecution in petitioner's trial had sought to prove that petitioner had intentionally murdered a man during the commission of an attempted robbery. In his opening statement to the jury counsel for the defendant-petitioner admitted that the deceased had apparently been shot accidently by the petitioner, but stated that he would prove that there was never a robbery or attempted robbery. Petitioner's testimony on direct examination was to the effect that he had been walking into a parking lot, admittedly with a pistol, and that something hit his hand and the weapon discharged. Petitioner stated that he did not see any cars in the lot or anyone in a car, and that he did not know whether or not the shot that was fired hit anyone. The excluded statements which were read into evidence to impeach the petitioner's testimony related that petitioner had seen a Nash Rambler in the lot, that he walked up to the car, and that after extending his gun into the car, a shot was fired into the victim's head. The impeaching testimony therefore went to the very crux of petitioner's innocence or degree of guilt. It contradicted petitioner's version of the events which surrounded the crime and went directly to the motive of the pistol being fired and whether petitioner knowingly killed a man. By any standard, even under the *Walder* exception, this testimony cannot be classified as harmless beyond a reasonable doubt.

The fact that there was prior conflicting testimony by petitioner's accomplices does not detract from the fact that the impeaching statements were those of the petitioner himself and that the testimony was of such a crucial nature. A contradiction of this magnitude attributed directly to the accused must have had a great impact on the jury and clearly must have contributed to petitioner's conviction. We also take note that the prosecutor mentioned petitioner's inconsistent testimony to the jury in his closing statement.

"We add that on principle the people should not be allowed to have admitted against a defendant who takes the stand evidence that would be inadmissible if he exercised his constitutional right to refrain from taking the stand. A contrary rule would unconstitutionally chill exercise of either the constitutional right to have improper evidence suppressed or the constitutional right to take the stand." Groshart v. United States, *supra*, 392 F.2d p. 180. "We find it intolerable that one constitutional right should have to be asserted in order to assert another." Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

For the reasons stated, the Court finds petitioner is being held in violation of his constitutional rights, and it is therefore ordered that petitioner be released from custody, unless he is granted a new trial within thirty days, during which new trial the testimony discussed herein shall not be used for any purpose.