Argued September 19, reversed and remanded December 22, 1972

# STATE OF OREGON, *Respondent, v.* SHERMAN ANDREW SPUNAUGLE (No. 36696), *Appellant.*

504 P2d 756

*Benhardt E. Schmidt,* Portland, argued the cause and filed the brief for appellant.

*Brian R. Barnes,* Deputy District Attorney, Roseburg, argued the cause for respondent. With him on the brief was Doyle L. Schiffman, District Attorney, Roseburg.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Defendant, convicted by a jury of illegal possession of a dangerous drug, former ORS 475.100, appeals from the resulting judgment.

Defendant and two others, Pinski, the owner of the camper vehicle in which all three were traveling, and another companion named Elkington, stopped at a service station in Roseburg to pick up a car belonging to Pinski. The police were called and Officer Daly arrived to interrogate Pinski concerning switched license plates on the car which had been left for repairs when the threesome were on their way from the Portland area to Mexico in the two vehicles.

Officer Daly took Pinski, in the absence of the defendant and Elkington, into a police car, ostensibly in connection with the switched license plates and read him his *Miranda* rights (*Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966)). Officer Daly in his testimony acknowledged that he was suspicious that the camper contained narcotics because he knew the party was returning from Mexico. Pinski, at the officer's request, executed a consent to search his camper vehicle. By the time the search began four police officers were present. Two, including Daly, entered the camper and made an exhaustive search of it for illegal drugs. None of the three suspects were inside the camper while the search was going on. A levi jacket was on the floor of a closet in the camper, and in its pockets was found a baggie, "one of these small plastic sandwich baggies, which contained four or five white double-scored tablets, which I immediately recognized as being what is known as mini bennies or amphetamine type tablets."

Officer Daly then took the jacket outside without disclosing what he had found in its pockets and asked Pinski if the jacket were his. Pinski indicated that the jacket belonged to the defendant. The record contains contradictory testimony on whether the de-

fendant was present when Pinski made this statement; and Officer Daly, who testified that the defendant was present, could not remember if he then asked the defendant if the jacket were his or if the defendant had responded directly to Pinski's statement. In any event the defendant admitted to Officer Daly that the jacket was his. The defendant testified that at that point he was "under the impression that we had no choice" about leaving—that Officer Daly had taken his vehicle operator's license and had refused to return it. This was never denied in Officer Daly's testimony.

The defendant then went to the police station where he was read his *Miranda* rights for the first time and made a further statement admitting possession of the four tablets which contained the dangerous drug amphetamine. The trio was then released and continued their journey to Portland.

The next day a search warrant for the camper was obtained by the federal authorities. The resulting search revealed a cache of 125 kilos of marihuana skillfully hidden in the camper. This evidence was later ordered suppressed by the United States District Court because the affidavit supporting the warrant was defective.

This prosecution followed. A hearing was held to determine the validity of the search of the camper. The court found that Pinski's consent was voluntary and refused to suppress the fruits of this search. At the trial defendant objected to the introduction by the state of the officer's statement that the defendant admitted while at the camper and prior to being advised of his *Miranda* rights that the jacket was his. The court concluded that at the time the statement was made the defendant was not a focal suspect nor in custody and

overruled the objection. This ruling, as well as the failure to suppress the evidence, forms the basis for three of the five assignments of error. The other two concern latitude allowed in the cross-examination of defendant by the state, and the sentence. In light of our disposition of the first four assignments it is unnecessary to consider the latter.

On direct examination defendant had testified in answer to his counsel's question whether he knew the bennies were illegal, "No, not really."

On cross-examination, over repeated overruled objections and under threat of being held in contempt of court, defendant was required to testify in detail about his involvement with the 125 kilos of marihuana which had been suppressed in federal court. The reason assigned by the prosecution and accepted by the court for relevancy of this evidence was that if defendant had knowledge about the drug marihuana and that it is illegal, that would be some evidence that he would know the drug in bennies is illegal.

■ The fact that this line of questioning forced the defendant to be a witness against himself does not invalidate the cross-examination provided the questioning was "* * * 'properly germane to and connected with the testimony in chief.' * * *" ORS 139.310; *State v. Cruse,* 231 Or 326, 330, 372 P2d 974 (1962); *State v. Rathie et al.,* 101 Or 339, 199 P 169, 200 P 790 (1921); *State v. Lem Woon,* 57 Or 482, 107 P 974, 112 P 427 (1910).

■ Here the defendant was forced to testify to the commission of a crime (the possession of marihuana) other than the one for which he was being tried. Such evidence if independently introduced is ordinarily admissible if it is relevant and its probative value out-

weighs its prejudicial influence. *State v. Lehmann,* 6 Or App 600, 488 P2d 1383 (1971). The defendant's testimony that he had seen marihuana in Tijuana was relevant to the inquiry concerning his general knowledge of drugs as a person who knows what marihuana looks like has some knowledge of illicit drugs. However, when that inquiry went beyond "general knowledge" and focused on the marihuana that had been hidden in the camper, the relevance of the testimony was outweighed by the prejudicial value. The defendant's statement on direct examination was in the nature of a confession of ignorance of the specific chemical content of bennies and of the provisions of Oregon law. Whether or not he had known that there was marihuana in the camper or how much has little bearing on this point.

In addition, the line of questioning was erroneous as an attempt to get into the record evidence of facts that had come to the attention of authorities through a search that had been declared invalid by the United States District Court. The testimony by its nature must have had a prejudicial effect with the jury. In *Walder v. United States,* 347 US 62, 74 S Ct 354, 98 L Ed 503 (1954), evidence that had been seized in a search, the results of which were later suppressed, was held admissible for the purpose of impeaching the credibility of a defendant. The facts of that case are distinguishable from the case at bar. There the search had occurred two years prior to the offense which was charged (possession of heroin). The defendant took the stand and denied ever having seen or possessed any narcotics; the state after laying a foundation on cross-examination introduced evidence that as a result of the previously suppressed search the authorities had found heroin in the possession of the

defendant. Here the defendant has not made such a blanket statement of his innocence as to permit the introduction of suppressed evidence for the purpose of impeaching his credibility on a collateral matter. The testimony was sought for the purpose of showing the defendant's "general knowledge of drugs." *Agnello v. United States,* 269 US 20, 46 S Ct 4, 70 L Ed 145, 51 ALR 409 (1925), is much similar to the case at bar. There the defendant under prosecution for an illegal sale of narcotics was cross-examined concerning narcotics found in his house as the result of a search that was later suppressed. The court held such cross-examination was improper and the admission of evidence found during the search to impeach the defendant's denial was erroneous. Here the evidence suppressed was being used to help the state prove its case-in-chief against the defendant and incidentally attack his testimony on a collateral matter.

The United States Supreme Court has also held that confessions that are suppressed because of a violation of the *Miranda* rule, but that are otherwise voluntary, are admissible to impeach the credibility of a defendant. *Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971) (defendant's denial of commission of crime attacked by introduction of confession made without benefit of *Miranda* warning). There the court reaffirmed its holding in *Walder* that suppressed evidence may be used to impeach the credibility of a defendant. However, Oregon in a parallel case had previously decided the issue presented in *Harris* and reached the opposite conclusion. *State v. Brewton,* 247 Or 241, 422 P2d 581, *cert denied* 387 US 943 (1967). There the court held that confessions obtained without the benefit of a *Miranda* warning which were inadmissible as direct evidence could not be used

to impeach the credibility of the defendant. The court refused to distinguish between the impeachment of a defendant whose testimony is restricted to a denial of the commission of the crime, and a defendant who testifies as to collateral matters. The court stated:

"If the choice is to exclude all illegally obtained evidence or to silence the defendant as a witness, it is better to exclude the illegal evidence. As we have said before, circumvention of constitutional liberties is not to be encouraged by permitting illegally obtained evidence to come in 'through the back door.' *State of Oregon v. Goodwin*, 207 Or 642, 645, 298 P2d 1024 (1956)." 247 Or at 246.

Because of *Brewton* we have no choice but to hold that the introduction of this testimony was in error. The exclusion of it does not destroy the state's case against the defendant, for he admitted on redirect examination that he knew that the possession of bennies was illegal in Oregon.

■ It is necessary to remand the case for a new trial. The same objections to the admissibility of the bennies that were made in the first trial may be anticipated again. They are substantial. Consequently, we briefly discuss the question involved.[1]

The evidence is contradictory and confusing as to whether defendant was in custody or in a coercive situation produced by the police when Officer Daly

---

[1] Another question about the suppression of the bennies which was not raised during the trial and upon which there is a paucity of evidence has been urged on appeal, namely, that Pinski could not consent for defendant to a search of defendant's clothes. This question is one of fact and comes down to whether defendant had a reasonable expectation of privacy as to the contents of his jacket pockets. State v. Taggart, 7 Or App 479, 491 P2d 1187 (1971); State v. Stanton, 7 Or App 286, 293-94, 490 P2d 1274 (1971).

elicited his admission concerning the jacket. Hopefully, in a new trial the evidence will be more satisfactory. We call attention to *State v. Travis,* 250 Or 213, 216-17, 441 P2d 597 (1968), where the court said:

"Though the facts of the *Miranda* case involved police-station interrogation, the reasoning in that decision applies to custodial questioning outside the police station. It is clear that the police may not avoid the *Miranda* rules by questioning an arrested suspect on the way to the police station or in the field. * * * It is not always clear, however, at what point field questioning of a suspect becomes custodial interrogation. See, e.g., *State v. Taylor,* 249 Or 268, 437 P2d 853 (1968).

"The badge of a police officer representing governmental authority, in and of itself, may have a subtly coercive effect. But we cannot believe that any psychological pressure emanating from an officer's authority is likely to cause an innocent person, who knows that he is free to come and go, to confess a crime he did not commit. Nor is a question by an officer likely to produce involuntary self-incrimination on the part of a guilty person if that person is not under arrest or under any other form of restraint."

Reversed and remanded.